UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
AT COVINGTON

*ELECTRONICALLY FILED*

| | |
|---|---|
| NICHOLAS SANDMANN, by and through his parents and natural guardians, TED SANDMANN and JULIE SANDMANN, | |
| *Plaintiffs*, | No. 2:20-cv-00026-WOB-CJS |
| v. | |
| GANNETT CO., INC. and GANNETT SATELLITE INFORMATION NETWORK, | |
| *Defendants.* | |

## Defendants Gannett Co., Inc. and Gannett Satellite Information Network's Motion to Dismiss and Motion to Strike

Jon L. Fleischaker
Michael P. Abate
KAPLAN JOHNSON ABATE & BIRD LLP
710 W. Main St., 4th Floor
Louisville, KY 40202
(502) 540-8280
jfleischaker@kaplanjohnsonlaw.com
mabate@kaplanjohnsonlaw.com

Michael J. Grygiel (admitted *pro hac vice*)
Cyndy E. Neidl (admitted *pro hac vice*)
Kelly L. McNamee (admitted *Pro hac vice*)
GREENBERG TRAURIG, LLP
54 State Street, 6th Floor
Albany, New York 12207
(518) 689-1400
grygielm@gtlaw.com
neidlc@gtlaw.com
mcnameek@gtlaw.com

*Counsel for Defendants*

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ...................................................................................................................i

TABLE OF AUTHORITIES .........................................................................................................ii

INTRODUCTION ..........................................................................................................................1

STATEMENT OF FACTS .............................................................................................................4

ARGUMENT ..................................................................................................................................6

I.      Plaintiff Sued the Wrong Defendants...................................................................................6

II.     Both the First Amendment and Kentucky Law Prohibit Plaintiff's Attempt to Proceed on a Theory of "Enterprise Liability" for Defamation...................................................................13

III.    Plaintiff's Claims are Barred by the Statute of Limitations................................................16

IV.     In the Alternative, This Court Should Strike Portions of the FAC That Exceed the Bounds of Permissible Pleading or Merely Repeat the Kind of Allegations this Court has Found Insufficient to Give Rise to a Defamation Claim. .........................................................................................18

CONCLUSION .............................................................................................................................19

CERTIFICATE OF SERVICE .....................................................................................................21

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Albright v. Attorney's Title Ins. Fund*, 504 F. Supp. 2d 1187 (D. Utah 2007) ...............................9

*Bryks v. Canadian Broad. Corp.*, 928 F. Supp. 381 (S.D.N.Y. 1996) .................................................12

*Catalina Marketing Int'l, Inc. v. Coolsavings.com, Inc.*, 2003 WL 21542491
   (N.D. Ill. July 3, 2003) ......................................................................................................................9

*Clark v. Viacom Int'l Inc.*, 617 Fed. App'x 495 (6th Cir. 2015).......................................................3

*Columbia Sussex Corp. v. Hay*, 627 S.W.2d 270 (Ky. Ct. App. 1981)...........................................13

*Corrigan v. U.S. Steel Corp.*, 478 F.3d 718 (6th Cir. 2007) .......................................................9, 10

*Courier-Journal & Louisville Times Co. v. Peers*, 747 S.W.2d 125 (Ky. 1988) ...............................3

*Crosse v. BCBSD, Inc.*, 836 A.2d 492 (Del. 2003)......................................................................9-10

*Doe v. Griffin*, 2020 WL 1816139 (E.D. Ky. Apr. 9, 2020) .........................................................11

*Erie Railroad v. Tompkins*, 304 U.S. 64 (1938)..............................................................................16

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974) ..............................................................2, 13, 15

*GMAC Mortgage, LLC v. McKeever*, Civ. Action No. 08-459-JBC
   (E.D. Ky. June 29, 2010) ...............................................................................................................15

*Henceroth v. Chesapeake Expl., LLC*, 814 Fed. Appx. 67 (6th Cir. 2020)....................................12

*Howell Contractors, Inc. v. Berling*, 383 S.W.3d 465 (Ky. Ct. App. 2012) ......................................10

*Martino v. W. & S. Fin. Grp.*, 715 F.3d 195 (7th Cir. 2013)........................................................13

*Miller's Adm'x v. Picard*, 301 Ky. 157 (Ky. 1945) ........................................................................15

*O'Brien v. Williamson Daily News*, 735 F. Supp. 218 (E.D. Ky. 1990),
   *aff'd* 931 F.2d 893 (6th Cir. 1991)...............................................................................................12

*Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767 (1986)...........................................................3

*Riddle v. Portfolio Recovery Associates, Inc.*, 2014 WL 1252610 (E.D. Ky. Mar. 26, 2014) ...........10

*Robison v. Watson*, 2012 WL 4217050 (E.D. Ky. Sept. 19, 2012) .................................................13

*Sandmann et al. v. ABC News, Inc., et al.*, No. 2:20-cv-00025 (E.D. Ky. 2019) ......................1, 6

*Sandmann et al. v. Cable News Network, Inc.*, No. 2:19-cv-00031 (E.D. Ky. 2019)...................1, 5

*Sandmann et al. v. CBS News, Inc., et al.*, No. 2:20-cv-00024 (E.D. Ky. 2019) ........................................ 1, 5

*Sandmann et al. v. Gannett Co., Inc.*, No. 2:20-cv-00026 (E.D. Ky. 2019) ................................................ 2, 5

*Sandmann et al. v. NBC Universal Media, LLC*, No. 2:19-cv-00056 (E.D. Ky. 2019)........................... 1, 5

*Sandmann et al. v. New York Times Company*, No. 2:20-cv-00023 (E.D. Ky. 2019) .............................. 1, 5

*Sandmann et al. v. Rolling Stone, LLC*, No. 2:20-cv-00027 (E.D. Ky. 2019) ......................................... 2, 6

*Sandmann et al. v. WP Co. LLC*, 401 F. Supp. 3d 781 (E.D. Ky. 2019)...........................................passim

*SE Texas Inns, Inc. v. Prime Hosp. Corp.*, 462 F.3d 666 (6th Cir. 2006).....................................................10

*Smith v. Westlake PVC Corp.*, 132 F.3d 34 (6th Cir. 1997) ................................................................... 2, 13

*Stern v. News Corp.*, 2010 WL 5158635 (S.D.N.Y. Oct. 14, 2010), *report and recommendation*
    *adopted*, 2010 WL 5158637 (S.D.N.Y. Dec. 16, 2010) ...................................................................... 8, 10

*Susko v. Cox Enterprises, Inc.*, No. CIV.A. 5:07CV144,
    2008 WL 4279673 (N.D. W. Va. Sept. 16, 2008) ...........................................................................10-11

*United States v. Bestfoods*, 524 U.S. 51 (1998) ............................................................................................9

*Wallace v. Wood*, 752 A.2d 1175 (Del. Ch. 1999) .....................................................................................10

*Wenske v. Blue Bell Creameries, Inc.*, No. CV 2017-0699-JRS,
    2018 WL 5994971 (Del. Ch. Nov. 13, 2018) ....................................................................................10

*Williby v. Hearst Corp.*, No. 5:15-CV-02538-EJD, 2017 WL 2929454
    (N.D. Cal. July 10, 2017)....................................................................................................................10

*Wilson v. Scripps-Howard Broad. Co.*, 642 F.2d 371 (6th Cir. 1981) ........................................................13

*Winn v. United Press Intern.*, 938 F. Supp. 39 (D.D.C. 1996)...................................................................12

**Statutes**

KRS 411.051(1) ...........................................................................................................................................11

KRS 413.171(1) ............................................................................................................................................6


**Rules**

Fed R. Civ. P. 8(a) ......................................................................................................................................18

Fed. R. Civ. P. 8(d) .....................................................................................................................................18

## INTRODUCTION

The First Amended Complaint ("FAC") is Plaintiff's second attempt to hold the press liable for the negative attention focused by the world on his own conduct on the steps of the Lincoln Memorial, after a political rally morphed into a viral public controversy. Gannett Co., Inc. moved to dismiss Plaintiff's first broadside attack on the separate articles published by independent Gannett newspapers, arguing, among other things, that a parent corporation cannot be liable as a matter of law for the allegedly defamatory articles published by its various subsidiaries. Instead of amending his complaint to name as defendants the individual newspapers that actually published the articles he attacks, Plaintiff doubled down on his original strategy, focusing even more intently on the actions of Gannett Co., Inc. and another of its subsidiaries, the Gannett Satellite Information Network. By purposefully electing not to sue the actual newspapers who published the articles about which he complains, Plaintiff is not only flouting fundamental corporate law principles but pressing a novel theory of "enterprise" liability that does not comport with either the Constitution or Kentucky defamation law. In short, in his attempt to cure fatal pleading defects, Plaintiff has made matters *worse* for himself, not better.

This case is one of several arising out of Plaintiff's displeasure with the widespread public attention that he and his classmates attracted as a result of their participation in a public political protest on the National Mall. Plaintiff has sued a variety of news organizations claiming that *each* is to blame for *all* of the alleged damage to his reputation. In total, Plaintiff has sued eight different media entities seeking a combined total of *at least* $1.25 billion in compensatory and punitive damages, including Gannett for the breathtaking sum of $195,000,000.[1]

---

[1] *See Sandmann et al. v. WP Co. LLC et al.*, No. 2:19-cv-00019, RE 65, Page ID#:869 (demanding damages in excess of $250,000,000); *Sandmann et al. v. Cable News Network, Inc.*, No. 2:19-cv-00031, RE 39-1, Page ID#:378 ($275,000,000); *Sandmann et al. v. NBC Universal Media, LLC*, No. 2:19-cv-00056, RE 23, Page ID#:313 ($275,000,000); *Sandmann et al. v. New York Times Company*, No. 2:20-cv-00023, RE 1, Page ID#:9 ($65,000,000); *Sandmann et al. v. CBS News, Inc., et al.*, No. 2:20-cv-00024,

There are several fatal flaws in the theory of the case Plaintiff has pleaded against Defendants. A threshold defect is that Plaintiff has sued the wrong parties — "Gannett Co., Inc." and "Gannett Satellite Information Network, LLC"— in attempting to hold them liable for the actions of the corporate subsidiaries that publish independent newspapers in the communities they serve. However, the FAC is devoid of any facts that support its conclusion that Gannett Co. exercises editorial control over and dictates the content of what is published by the five newspapers whose news coverage Plaintiff challenges.  Further, black-letter law is clear that Defendants' corporate form must be respected unless it was created to perpetrate a fraud on investors and creditors. Because Plaintiff does not — and cannot — plead any such thing, he cannot proceed against the only Defendants named in the FAC.

Compounding these fundamental deficiencies, Plaintiff has concocted a new theory of "enterprise liability" for defamation, which is squarely at odds with the First Amendment and Kentucky law. Both in this case and across all the cases that he has filed, Plaintiff proceeds as if he may sue any news organization that covered the high-profile event in question in a manner he dislikes, and hold each liable for all of his alleged injuries, without ever alleging that a specific statement from a particular defendant caused a discrete and identifiable injury. But that is not the law. Under the First Amendment, states may not "impose liability without fault," even in private-figure defamation cases, nor may they award windfall damages. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 347, 349-50 (1974). And Kentucky law is equally clear that injury to reputation from an allegedly defamatory statement *published by a particular defendant* is an element of a defamation claim that must be pleaded and proven. *See Smith v. Westlake PVC Corp.*, 132 F.3d 34 (6th Cir. 1997).

---

RE 1, Page ID#:9 ($60,000,000); *Sandmann et al. v. ABC News, Inc., et al.*, No. 2:20-cv-00025, RE 1, Page ID#:9 ($95,000,000); *Sandmann et al. v. Gannett Co., Inc.*, No. 2:20-cv-00026, RE 1, Page ID#:9 ($195,000,000); *Sandmann et al. v. Rolling Stone, LLC*, No. 2:20-cv-00027, RE 1, Page ID#:9 ($35,000,000).

The news coverage of the events at issue here "is inherently a matter of public concern." *Sandmann v. WP Co. LLC*, 401 F. Supp. 3d 781, 789 (E.D. Ky. 2019). Thus, Plaintiff cannot survive this Rule 12 motion unless his FAC sufficiently pleads the falsity of the challenged news coverage *and* facts showing how the publisher was at fault. *See Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986); *Clark v. Viacom Int'l Inc.*, 617 Fed. App'x 495, 508-509 (6th Cir. 2015). Here, that means alleging, at a minimum, that the purportedly false statements published by the newspapers *caused* the alleged harm to Plaintiff's reputation. In the context of an incident that went viral on the Internet, Plaintiff cannot make such a showing — which is perhaps why he has not even tried. Instead, he has thrown out wildly inflated numbers apparently based on what he believes is necessary to punish news organizations for their real-time coverage of a highly publicized encounter on the National Mall. That may make for a good TV sound bite, but the First Amendment does not permit libel laws to be used in this scattershot way.

Indeed, Plaintiff's theory of the case does violence to the core freedoms protected by the First Amendment. In essence, Plaintiff argues that no press outlet may cover breaking news events garnering intense public attention unless it first conducts a forensic investigation into all of the figures involved in the story and uncovers every angle of their potential or perceived bias. *See, e.g.*, FAC ¶ 98 (RE 34, Page ID#: 492) ("[I]t was negligent and reckless for Gannett to publish without any investigation Phillips' narrative as if it were a truthful, factual account of the January 18 Incident or of Phillips' feelings or reactions during those events."). But "[n]ews is news when it happens," *Courier-Journal & Louisville Times Co. v. Peers*, 747 S.W.2d 125, 129 (Ky. 1988)—particularly reports addressing matters of public concern that are receiving widespread attention in both traditional and social media. If a claim like this is allowed to proceed, it will destroy the press's ability to offer contemporaneous coverage of breaking news events.

3

The Complaint must also be dismissed because Plaintiff's claims are untimely. Although Plaintiff sued three other media companies within the one-year statute of limitations, seeking to recover hundreds of millions of dollars in damages to remedy the very same alleged reputational harm he invokes in this case, he did not file this lawsuit until well after the limitations period expired. Under the circumstances, having demonstrated that he was capable of suing within the prescribed period, Plaintiff should not be permitted to use a tolling statute designed to protect minors unable to vindicate their rights as a vehicle to litigate test cases as precursors before blanketing the waterfront with copycat lawsuits.

Finally, if this Court does not dismiss the FAC in its entirety pursuant to Rule 12(b)(6), it should strike portions of the pleading that reassert the very same allegations this Court has previously dismissed at the pleading stage. The FAC cuts-and-pastes extensive references to other allegedly defamatory statements that were dismissed by the Court as nonactionable in the course of ruling on motions to dismiss in the first wave of lawsuits against media defendants brought by Plaintiff. If this case is to proceed, it must be divested of hyperbole and non-actionable statements and focused on allegations against the correct parties that plausibly could give rise to a viable defamation claim.

## STATEMENT OF FACTS

This Court is familiar with the background facts of the dispute, which were summarized in its decision in *Sandmann v. WP Co. LLC*, 401 F. Supp. 3d 781, 786-87 (E.D. Ky. 2019). As relevant here, Plaintiff Nicholas Sandmann accompanied many of his classmates to a political rally in Washington, D.C. *See* FAC ¶ 20 (RE 34, Page ID #477). After the rally concluded, Plaintiff and his classmates went to the steps of the Lincoln Memorial to wait on their bus. *Id.* ¶ 21.

"While the students waited, a group of men from an organization called the Black Hebrew Israelites began yelling racial epithets and threats of violence towards them." *Sandmann*, 401 F. Supp.

3d at 786. Then, "a third group of individuals – Native Americans who had been attending the Indigenous Peoples March on the National Mall that day – began approaching the students, singing and dancing, and recording a video." *Id.* At the front of that group was an activist named Nathan Phillips, who "walked very close to Sandmann, beating his drum and singing within inches of Sandmann's face." *Id.* What happened next is captured on "a 1-hour, 46-minute video of the incident with Sandmann and Phillips, which Sandmann alleges accurately depicts those events." *Id.*

The incident on the national mall went "viral" as a result of social media posts linking to videos of the incident. *Id.* Untold thousands of media outlets, public officials, and private individuals posted articles and opinion pieces about it online and in print. Within a month of the incident and its coverage, Plaintiff launched a first wave of lawsuits against media organizations in this Court, including the Washington Post (Civ. Action No. 2:19-cv-00019, filed 2/19/19), CNN Civ. Action No. 2:19-cv-00031, filed 3/12/19), and NBC Universal (Civ. Action No. 2:19-cv-00056, filed 5/1/2019). This Court initially dismissed all claims against the Washington Post, *see* 401 F. Supp. 3d at 797, but later reconsidered that decision in part to allow a narrow set of claims to proceed to discovery concerning "three statements . . . that plaintiff 'blocked' Nathan Phillips and 'would not allow him to retreat.'" *Sandmann*, RE 64, Page ID# 861.

In January 2020, Plaintiff informed this Court that he had reached a settlement with CNN for an undisclosed amount. Approximately one month later, on March 2, 2020, Plaintiff launched a second wave of lawsuits against a new group of media defendants, including Gannett Co., Inc. (Civil Action No. 2:20-cv-00026), the New York Times (Civil Action No. 2:20-cv-00023), CBS News (Civil Action No. 2:20-cv-00024), ABC News (Civil Action No. 2:20-cv-00025), and Rolling Stone (Civil Action No. 2:20-cv-00027). Each of these lawsuits was filed more than one year after the publication of the news articles it attacks, despite Plaintiff's demonstrated ability to file lawsuits within that original window.

## ARGUMENT

### I.    Plaintiff Sued the Wrong Defendants.

A threshold — and fundamental — problem with the FAC is that Plaintiff has sued the wrong parties. Gannett Co. and Gannett Satellite Information Network, the named defendants, did not publish any of the purportedly defamatory news articles Plaintiff disputes. Rather, and as the FAC itself alleges, the articles were written and published by individual community newspapers providing topical news coverage to their readers: the *Cincinnati Enquirer*, *Detroit Free Press*, *Louisville Courier Journal*, and *Tennessean. See* FAC ¶¶ 212-315 (RE 34, Page ID#: 42-62). Each of these newspapers is published by a separate corporate entity, with a legal identity distinct from the Gannett Co. and Gannett Satellite Information Network (who Plaintiff lumps together as "Gannett."  *See* FAC ¶ 198 (RE 34, Page ID#: 510)).

Plaintiff's attempt to target Gannett as a collective enterprise is premised on the claims that Gannett exercises editorial control over and "directly participates in the content published by its USA Today Network." (FAC ¶¶ 159-60, RE 34, Page ID#: 503).  The FAC pleads no facts, however, that support these conclusory allegations.  To prop them up, Plaintiff resorts to two meritless theories.

First, Plaintiff alleges that pre-litigation correspondence from Gannett Co.'s in-house counsel somehow proves that Gannett exercises complete editorial control over the publications whose articles he is attempting to challenge in this lawsuit. But that argument is pure bootstrapping. Plaintiff himself chose to direct his retraction demand solely to Gannett Co., Inc. and its General Counsel. *See* Apr. 22, 2019 Retraction Demand, Dkt. No. 34-7, Page ID#: 573. The fact that Gannett Co.'s in-house counsel responded to that demand using the definitions contained in

Plaintiff's letter[2] does not mean that Gannett has somehow conceded it was the publisher of the relevant newspapers. Nothing in Gannett Co.'s decision to respond on behalf of all five newspapers in painstakingly rebutting Plaintiff's sweeping demand for a retraction pertaining to "more than twenty-six articles and fourteen social media posts" (Dkt. No. 34-8, Page ID#: 607) and encompassing "more than one hundred and seventy-five statements" (*id.*) — the vast majority of which this Court has determined are non-actionable as a matter of law —remotely demonstrates that either Gannett Co. or Gannett Satellite Information Network is the corporate entity which operates each of them or dictates what they publish in each day's edition.  To the contrary, a careful reading of the letter confirms its emphasis on the editorial autonomy and independent coverage provided by each newspaper in "report[ing] multiple perspectives of the event," driven by their role as local news organizations in the communities they serve.  (Dkt. No. 34-8, Page ID#: 613)

Second, Plaintiff speculates that "reasonable consumers understand" (FAC ¶ 167, Dkt. No. 34, Page ID#: 503) the newspapers to be owned by a "single publisher" (*id.*).  But even if true, that has no bearing on whether Plaintiff has named the proper parties as defendants to his lawsuit (as explained in more detail below).  Likewise, the fact that community newspapers comprising the USA TODAY Network share the "same website template and header" (FAC ¶ 168, Dkt. No. 34, Page ID#: 503-04) — a common practice in the newspaper publishing industry — and display a "unified blue dot logo" (*id.* ¶ 169, Dkt. No. 34, Page ID#: 504) on web browser tabs for marketing purposes says nothing whatsoever about who directs the editorial and reportorial staffs of the respective newspapers, who is in charge of their newsroom operations, or who decides what they publish.

---

[2] Plaintiff's counsel's April 22, 2019, retraction demand employed "USA Today Network" as a defined term to refer to "the *Cincinnati Enquirer, Detroit Free Press, Louisville Courier Journal, USA Today, and Tennessean.*"  (Dkt. No. 34-7, Page ID#: 573).  Gannett's counsel simply adopted the same convention in responding thereto.

The unsupported claim that Gannett Co. and Gannett Satellite Information Network — two companies headquartered in McLean, Virginia (FAC ¶¶ 196-197, Dkt. No. 34, Page ID#: 510) — "directly participated in the publication" (*id.* ¶ 201) of the local news coverage complained of in communities as far-flung as Detroit, Nashville, Louisville, and Cincinnati is no more persuasive.  To the extent that Plaintiff's theory presumes that Gannett Co. imposes an editorial straightjacket on what news stories get assigned, reported, and published for "261 local media brands across 46 states" (*id.* ¶ 152, Dkt. No. 34, Page ID#: 502), it refutes itself.

The generic allegation that Gannett Co. wholly owns the five newspapers (*id.* ¶¶ 156-157) is not sufficient to disregard the corporate form and fails to establish that either Gannett Co. or Gannett Satellite Information Network was legally responsible for the publication of the allegedly defamatory articles.  Gannett Co.'s ultimate ownership of the newspapers is just that — a corporate interest as an indirect parent to the corporate entities that publish the newspapers at issue. Accordingly, while Plaintiff attempts to attribute publication of the articles complained of to Gannett Co., there is no basis on what he has alleged for a parent corporation to be held directly liable for the news reporting of indirect subsidiaries and their employees.

The decision in *Stern v. News Corp.*, No. 08 CIV 7264 (DAB) (RLE), 2010 WL 5158635 (S.D.N.Y. Oct. 14, 2010), *report and recommendation adopted*, 2010 WL 5158637 (S.D.N.Y. Dec. 16, 2010), a case with analogous facts, is particularly instructive here.  In *Stern*, the plaintiff sued News Corporation — a national media company with a number of subsidiary companies, including NYP Holdings, Inc., the owner and publisher of the *New York Post* — for defamation based on, *inter alia*, an article published in the *Post* about Stern's legal threats against the paper.  2010 WL 5158635, at *1-2.  News Corporation successfully argued "that it [wa]s not a proper party to Stern's defamation claims arising from the *New York Post* article because it does not publish the *Post* and cannot be held liable for the tortious acts of a subsidiary."  *Id.* at *4.  The Court dismissed the plaintiff's defamation

claims against News Corporation "as having been brought against an improper party." *Id.* (granting summary judgment dismissing defamation complaint as a matter of law).

So too here, where the FAC's allegations are nowhere near enough to permit Plaintiff to sue Gannett for the alleged negligence of its subsidiary newspapers. "A parent corporation generally is not liable for the acts of its subsidiary, even if its subsidiary is wholly owned." *Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 724 (6th Cir. 2007) (citing *United States v. Bestfoods*, 524 U.S. 51, 61 (1998)). Only "in extraordinary cases, such as the corporate form being used for wrongful purposes, courts will pierce the corporate veil and disregard the corporate entity, treating the parent corporation and its subsidiary as a single entity." *Id.* The FAC alleges nothing that would justify this draconian measure here.

That Gannett Co. achieves some efficiencies for its newspapers by merging back-office functions does not provide a valid ground for veil-piercing. Thus, the mere fact these affiliated newspapers share a single in-house legal department (FAC ¶¶ 163-66) does not mean they cease to be separate corporate entities for liability purposes. *See, e.g., Albright v. Attorney's Title Ins. Fund*, 504 F. Supp. 2d 1187, 1210 (D. Utah 2007) ("'It is also common practice that certain functions, such as accounting and legal services, be shared within a corporate family. Such shared functions are insufficient to pierce the corporate veil.'" (quoting *Catalina Marketing Int'l, Inc. v. Coolsavings.com, Inc.*, 2003 WL 21542491, at *5 (N.D. Ill. July 3, 2003)).

Moreover, "[t]he burden of proof to demonstrate grounds for piercing the corporate veil is on the party seeking to impose liability on the parent corporation." 478 F.3d at 724. That burden is a high one: a plaintiff seeking to impose liability on a parent corporation for the acts of a subsidiary "must plead facts supporting an inference that the corporation, through its alter-ego, has created a sham entity designed to defraud investors and creditors." *Crosse v. BCBSD, Inc.*, 836 A.2d 492, 497

(Del. 2003).[3] Here, where Plaintiff has alleged *no* facts that could remotely support veil piercing, all claims against Defendants must be dismissed. *See, e.g.*, *Riddle v. Portfolio Recovery Associates, Inc.*, No. CIV.A. 12-82-DLB-JGW, 2014 WL 1252610, at *3 (E.D. Ky. Mar. 26, 2014) ("Plaintiff has offered no argument, or set forth any facts, to suggest that PRA, Inc. is the alter ego of PRA, LLC. Having failed to do so, PRA, Inc. is entitled to judgment as a matter of law."); *see also Wenske v. Blue Bell Creameries, Inc.*, No. CV 2017-0699-JRS, 2018 WL 5994971, at *6 (Del. Ch. Nov. 13, 2018) ("Nor will conclusory allegations that the parent's management exclusively dominated and controlled the subsidiary's management suffice to state a claim for veil-piercing.").

This strict rule governs in defamation cases, too. Courts have repeatedly dismissed defamation claims filed against a parent corporation when the asserted basis for liability was the company's ownership and control over a subsidiary that published the allegedly defamatory statements. *See, e.g.*, *Williby v. Hearst Corp.*, No. 5:15-CV-02538-EJD, 2017 WL 2929454, at *2 (N.D. Cal. July 10, 2017) ("Because Williby has not adequately alleged an agency relationship between the Hearst Corporation and Mourelo, the Court again finds that the Hearst Corporation is not a proper party to this action.") (granting Rule 12(b)(6) motion to dismiss complaint for failure to sue proper defendant); *Stern v. News Corp.*, 2010 WL 5158635, at *4 ("Stern's defamation claims based on the *Post* article should be dismissed as having been brought against an improper party."); *Susko v. Cox Enterprises, Inc.*, No. CIV.A. 5:07CV144, 2008 WL 4279673, at *8 (N.D. W. Va. Sept. 16, 2008)

---

[3] A court sitting in diversity must apply "the law of the state in which the federal court sits" in any case where "the success of a state law claim brought in federal court under diversity jurisdiction is dependent on piercing the corporate veil." *Corrigan*, 478 F.3d at 723. Here, that is the law of Kentucky, which in turn looks to a parent company's state of incorporation to determine if veil piercing is appropriate. *See Howell Contractors, Inc. v. Berling*, 383 S.W.3d 465, 467 (Ky. Ct. App. 2012). Because Plaintiff concedes Gannett Co. is incorporated under Delaware law (*see* FAC ¶ 196), that state's high bar for piercing the corporate veil applies. *See SE Texas Inns, Inc. v. Prime Hosp. Corp.*, 462 F.3d 666, 675 (6th Cir. 2006) (noting that under Delaware law "[t]he principle of piercing the fiction of the corporate veil is to be applied with great caution and not precipitately, since there is a presumption of corporate regularity" (citations omitted)); *Wallace v. Wood*, 752 A.2d 1175, 1183 (Del. Ch. 1999) ("Persuading a Delaware court to disregard the corporate entity is a difficult task.").

10

("Accordingly, it appears that plaintiffs are seeking to impose liability on Cox Enterprises, Inc. and Cox Communications, Inc. simply because these are the alleged parent corporations of WTOV, Inc. This type of liability, however, is forbidden."). This rule is dispositive here and compels dismissal of all defamation claims in the FAC.[4]

All of these flaws were made plain in Gannett Co.'s motion to dismiss Plaintiff's initial Complaint.  Implicitly conceding the point, Plaintiff sought leave to re-plead and add additional defendant(s). Yet he chose only to add Gannett Satellite Information Network, which he alleges is the publisher of USA Today. *See* FAC ¶ 155 (RE 34, Page ID#: 502). But even if that were correct, the only concrete allegations regarding USA Today in the FAC state that it republished articles by other Gannett entities which Plaintiff has strategically elected—for whatever reason—not to sue. *See, e.g.*, FAC ¶¶ 230, 244, 255, 263, 278, 291, 303. Nothing in the FAC alleges that USA Today, *itself*, did anything actionable other than republish stories from other newspapers which share the same ultimate corporate parent.

This revised argument runs squarely into a separate defense available to media defendants: the "wire service" defense. Under that doctrine, a newspaper is not required "to independently

---

[4] Plaintiff's disregard of Gannett's corporate form has additional consequences for the litigation. First, under this Court's reasoning in *Doe v. Griffin*, 2020 WL 1816139 (E.D. Ky. Apr. 9, 2020), the Court likely would lack personal jurisdiction over some out-of-state publishers whose news articles form the basis of the FAC. A defamation plaintiff cannot sue an out-of-state defendant in a federal court sitting in Kentucky based solely on the theory that the plaintiff allegedly suffered reputational injury in the Commonwealth. *Id.* at *3-*5.

Second, Plaintiff's failure to treat these publications as distinct legal entities means he has not properly demanded a retraction *from the relevant publisher* of the news articles, as required by Kentucky's retraction statute. *See* KRS 411.051(1). As Plaintiff himself alleges (FAC ¶ 163, RE 34, Page ID#: 503), he only sent a retraction demand to Gannett Co., Inc., which did not publish any of the articles in question. That means he is precluded from seeking punitive damages because a proper retraction demand is a statutory prerequisite to their recovery. *See* KRS 411.051(1) ("Punitive damages may be recovered only if the plaintiff shall allege and prove . . . that the newspaper . . . failed to make conspicuous and timely publication of a correction *after receiving a sufficient demand for correction*." (emphasis added)).

verify the accuracy of the wire release of a reputable news agency" before republishing it. *O'Brien v. Williamson Daily News*, 735 F. Supp. 218, 225 (E.D. Ky. 1990), *aff'd*, 931 F.2d 893 (6th Cir. 1991); *see also Winn v. United Press Intern.*, 938 F. Supp. 39, 44 (D.D.C. 1996) ("[T]he wire service defense is available where, as here, a news organization reproduces an apparently accurate article by a reputable publisher, without actual knowledge of its falsity." (citation omitted)). "No notion of ordinary care, on the circumstances of this case, would require the newspapers to have independently investigated the story." *O'Brien*, 735 F. Supp. at 225 *Id.; cf. also, e.g., Bryks v. Canadian Broad. Corp.*, 928 F. Supp. 381, 383 (S.D.N.Y. 1996) ("As a republisher, CNN is entitled under New York law 'to place its reliance upon the research of the original publisher absent a showing that [CNN] 'had, or should have had, substantial reasons to question the accuracy of the articles or the bona fides of [the] reporter.'" (citation omitted)). Thus, without alleging that USA Today did something other than republish the articles of the reputable newspapers Plaintiff has deliberately elected not to sue—the *Enquirer*, the *Courier Journal*, the *Detroit Free Press*, and the *Tennessean*—Plaintiff cannot hold USA Today or Gannett Satellite Information Network liable for the content produced by these entities. Yet that is precisely what he has attempted to do. It represents nothing less than "veil-piercing by another name and without the necessary predicate." *Henceroth v. Chesapeake Expl., LLC*, 814 Fed. Appx. 67, 72 (6th Cir. 2020).

Apparently to indulge his choice of forum, Plaintiff has gone to great lengths to *avoid* suing the actual publishers of the articles he attacks, despite being called on this fatal pleading flaw once before. His flagrant forum shopping only makes sense when viewed through the lens of what this case really is: an attempt to hold the press at large responsible for the harms he claims to have suffered, without trying to assign fault or specific causation to any particular defendant or allegedly defamatory statement. But as explained below, the First Amendment does not allow this kind of "enterprise liability" claim—either between different news organizations or, as here, within one.

## II.    Both the First Amendment and Kentucky Law Prohibit Plaintiff's Attempt to Proceed on a Theory of "Enterprise Liability" for Defamation.

Plaintiff's conflation of the alleged fault of the separate newspapers who published different articles in discrete jurisdictions is nothing short of an attempt to impose "enterprise liability" in a defamation case — an approach the Constitution and Kentucky law prohibit. The First Amendment forbids courts from holding parties liable for injuries caused by the speech of others. Indeed, a defamation plaintiff "may recover only such damages as are sufficient to compensate him *for actual injury.*" *Gertz,* 418 U.S. at 350 (emphasis added). Likewise, under Kentucky law, harm to reputation from the allegedly defamatory publication is an element of the tort that must be sufficiently alleged and proved; it is not merely a question of damages. *See Smith v. Westlake PVC Corp.*, 132 F.3d 34 (6th Cir. 1997) ("Under Kentucky law, four elements are necessary to establish defamation: (1) defamatory language; (2) about the plaintiff; (3) which is published; and (4) which causes injury to reputation." (citing *Columbia Sussex Corp. v. Hay*, 627 S.W.2d 270, 273 (Ky. Ct. App. 1981)); *see also Robison v. Watson*, 2012 WL 4217050, at *8 (E.D. Ky. Sept. 19, 2012) (Bertelsman, J.) (same).

Thus, a defamation plaintiff must plead that statements attributable to a particular defendant were the actual cause of the harms he asserts. In matters of public concern, harm to reputation cannot be assumed; causation is an element of a defamation claim and must be proven. *See Gertz,* 418 U.S. at 347 (rejecting scheme of presumed damages for defamation that prevailed at common law, and emphasizing states may not "impose liability without fault"); *Wilson v. Scripps-Howard Broad. Co.*, 642 F.2d 371, 375 n.1 (6th Cir. 1981) (defendants' alleged negligence "must be the proximate cause of actual damages"); *see also Martino v. W. & S. Fin. Grp.*, 715 F.3d 195, 206 (7th Cir. 2013) (in defamation cases, special damages are "damages that are pecuniary in nature and that have been actually incurred *as a natural and proximate consequence of the wrongful act*" (emphasis added)). It is particularly inappropriate to presume causation here, where the newspaper accounts disputed by

13

Plaintiff were just a handful of the thousands of media and other postings about the incident online, including on social media.

The FAC does not explain — nor could it — how the astronomical damages Plaintiff claims to have suffered can be traced to the specific news articles he attacks. To the contrary, Plaintiff conceded during an oral argument before this Court that his theory of recovery is that he was injured *by the totality of the coverage* of the encounter at the Lincoln Memorial and that the damages are "not separable by a defendant or by statement." Tr. of Oral Argument, *Sandmann v. WP Co., LLC*, No. 2:19-cv-00019, RE 75, Page ID# 1148.[5] That is a fatal concession, because the First Amendment simply does not permit this kind of in-for-a-penny, in-for-a-pound theory of liability in a defamation case challenging press coverage on a matter of intense public concern. Plaintiff can neither eliminate nor avoid his constitutional obligation to allege and prove that *these* publications damaged his reputation in measurable ways by arguing, as he does, that a jury is capable of imposing some sort of rough justice on each news outlet he has elected to sue.

Plaintiff's erroneous embrace of an "enterprise liability" theory operates on various levels within this very case. Not only is he commingling the harm that distinct Gannett Co. subsidiaries allegedly caused, but he is also attempting to lump together the harms allegedly caused by those

---

[5] The full exchange with the Court read:

> THE COURT: Okay. Now, listen carefully to this next question because it's important procedurally. Will you have evidence that can attribute any specific part of the damages to any specific defendant, or is it all one big ball of wax? *Is all this publicity together is affecting him*, or can you point out they had to move out of their house and that was the fault of this Defendant 1 and that he was denied from participating in his school, and that was Defendant 2? *It's my impression that it was all pretty general. Is that correct?*

> MR. WOOD: I agree with your impression. It would be more—there may be some specific slices, but the overall forest is, I believe, consistent with Your Honor's impression *that it's not separable by a defendant or by statement*. Each statement is unique, and the jury will have to evaluate the whole of the damage as to each defendant.

*Sandmann v. WP Co., LLC*, No. 2:19-cv-00019, RE 75, Page ID# 1148 (emphasis added).

newspapers' publications with the damages purportedly attributable to coverage by other media companies — and the world at large — who extensively reported, tweeted, texted, posted, and commented upon the controversial events that took place on the National Mall.[6] This is improper. Plaintiff cannot recover for any allegedly defamatory story or statement unless he can show that the *specific statement* at issue harmed him. *See Gertz*, 418 U.S. at 347, 350.

Moreover, even if Plaintiff's FAC could somehow survive dismissal, he would not be entitled to recover more than once for this same alleged reputational injury. *See Miller's Adm'x v. Picard*, 301 Ky. 157, 159 (Ky. 1945) ("'The law does not permit a double recovery for a joint wrong. One satisfaction is all that the injured party is entitled to.'" (citation omitted)). Defendants would be entitled to discover the amounts of Plaintiff's settlements with CNN and the Washington Post, *see GMAC Mortgage, LLC v. McKeever*, Civ. Action No. 08-459-JBC, at *3 (E.D. Ky. June 29, 2010) ("A confidential settlement agreement is not privileged and 'the mere fact that parties agree to maintain the confidentiality of their agreement does not serve to shield the information from discovery . . .'" (citation omitted)), and would not be liable to Plaintiff if he has been fully compensated for the alleged injury to his 16-year-old reputation, *Miller's Adm'x*, 301 Ky. at 159-160 ("'Though he may sue one or all of several joint tort-feasors, yet if he recovers a judgment against one of them and obtains satisfaction, that operates as a discharge of the others.'" (citation omitted)).

---

[6] At the January 7, 2020, Rule 26(f) conference involving the three media defendants initially sued by Plaintiff, the Court pointedly questioned the "collective" damages theory espoused by his counsel:

> THE COURT: That's why I asked you the second question, could you apportion out which stories, separate damage that each story did, or was it all collective, and you said it was all collective.

> MR. WOOD: I may have misspoke. You cannot apportion - -

> THE COURT: You may wish you hadn't spoke.

*Sandmann v. WP Co., LLC*, No. 2:19-cv-00019, RE 75, Page ID# 1175.

Once again, Gannett Co. raised this same "enterprise liability" argument in its motion to dismiss Plaintiff's original Complaint. Although he took the opportunity to substantially revise his allegations to try to stave off dismissal, Plaintiff did not insert a single allegation that even *attempts* to tie his alleged damages to a specific statement in any of the articles he attacks. On the contrary, he blames his alleged damages on his "exposure, at the young age 16, to such wide-scale and sustained public hate." FAC ¶ 356(c) (RE 34, Page ID#: 538). He does nothing to plausibly allege that such attention was traceable to *Defendants'* publications, as opposed to the Viral Video and widespread coverage of and commentary on it by thousands of journalists, politicians, and other citizens that discussed it in real time online. But that is precisely what the Constitution and Kentucky law require.

## III.   Plaintiff's Claims are Barred by the Statute of Limitations.

Dismissal is also warranted because Plaintiff failed to bring his defamation claims within the controlling one-year statute of limitations.  Defendants acknowledge that this Court, in addressing this defense raised by other defendants in four related cases, held that Plaintiff may evade dismissal by availing himself of KRS 413.170(1).  (*See* Case 2:20-cv-00023, Doc. #27; Case 2:20-cv-00024, Doc. #33; Case 2:20-cv-00025, Doc. #36; Case 2:20-cv-00027, Doc. #35).  Defendants respectfully submit that the Court erred in reaching this conclusion.

In a diversity case such as this, a federal court must apply Kentucky law.  *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).  Where the Kentucky Supreme Court has not ruled on an issue, the court must predict how the Kentucky Supreme Court would rule and "may rely on the state's intermediate appellate court decisions, along with other persuasive authority, in making this determination." *Kepley v. Lanz*, 715 F.3d 969, 972 (6th Cir. 2013).  A court may not ignore the decision of an intermediate appellate court simply due to its own disagreement:  "If the state appellate court announces a principle and relies upon it, that is a datum not to be disregarded by the

federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Clutter v. Johns Manville Sales Corp.*, 646 F.2d 1151, 1153 (6th Cir. 1981).

The Kentucky Court of Appeals has held that KRS 413.170(1) cannot be used where the plaintiff — notwithstanding his or her infancy — timely commenced litigation during the limitations period. *See Tallman v. City of Elizabethtown*, No. 2006-CA-00712, 2007 WL 3227599 (Ky. Ct. App. Nov. 2, 2007) (unpublished). This Court distinguished *Tallman*, stating the decision "reveals that the Court [of Appeals] considered the litigation before it to be highly unusual, and it noted that its ruling was made in light of 'the procedural history of the case.'" *Sandmann v. Rolling Stone, LLC*, 2020 WL 5850953, at *2 (E.D. Ky. Oct. 1, 2020) (quoting *Tallman*, 2007 WL 3227599, at *3).

Respectfully, there is nothing in the *Tallman* decision suggesting that the litigation before it was "highly unusual" and, if anything, Plaintiff's serial litigation here, brought by sophisticated counsel against multiple high-profile defendants, presents far more "unusual" circumstances than those in *Tallman*. More so than in *Tallman*, the underlying "procedural history" here militates heavily against the application of KRS 413.170(1). As this Court is well aware, Plaintiff commenced a series of defamation actions against prominent news organizations within the one-year limitations period.[7] Rather than bring a timely action against Gannett at that time, Plaintiff adopted a wait-and-see approach and intentionally delayed the filing of this action until more than a year after the statements complained of were published. This is pure gamesmanship amounting to an exploitation of the tolling provision, and, as the *Tallman* decision reflects, offends the purpose of the statute.

---

[7] As noted *supra* n.1., Plaintiff has filed no less than eight separate defamation lawsuits in this Court arising out of the viral occurrence on the National Mall on January 18, 2019. Notably, three of the eight actions were filed within the one-year statute of limitations for defamation. *See Nicholas Sandmann, et al. v. WP Company LLC*, No. 2:2019-cv-00019 (E.D. Ky. filed Feb. 19, 2019); *Sandmann v. Cable News Network, Inc.*, No. 2:2019-cv-00031 (E.D. Ky. filed Mar. 12, 2019); *Sandmann v. NBC Universal Media, LLC*, No. 2:2019-cv-00056 (E.D. Ky. filed May 1, 2019). The second wave of lawsuits, including this action, were all filed outside of the limitations period applicable under Kentucky law.

The federal district court cases cited by this Court in rejecting the holding in *Tallman* are distinguishable in that neither involved the novel situation where the plaintiff brings multiple actions within the statutory period, waits for a favorable result after dispositive motion practice, and only then files several new actions against additional defendants outside the statutory period.[8] The tolling provision serves no purpose where a plaintiff like Sandmann — who has already secured successful settlements in at least two cases involving the same alleged reputational harm — has demonstrated that nothing impeded his capacity to sue within the applicable limitations period.[9]

**IV.    In the Alternative, This Court Should Strike Portions of the FAC That Exceed the Bounds of Permissible Pleading or Merely Repeat the Kind of Allegations this Court has Found Insufficient to Give Rise to a Defamation Claim.**

Rule 8 requires that a pleading contain "a short and plain statement of the claim," and that each allegation in a pleading "be simple, concise, and direct." Fed. R. Civ. P. 8(a), (d).  Plaintiff's revised complaint violates this by, among other things, reprising claims this Court found non-actionable and discussing the reporting of a variety of journalistic organizations (other than Gannett) nowhere placed at issue in this case.  In doing so, it forces Defendants and the Court to sift through 70 pages of rambling and irrelevant factual that cannot give rise to a plausible defamation claim.

---

[8] *See, e.g., Sandmann*, 2020 WL 5850953, at *2 (citing *Bradford v. Bracken Cnty.*, 767 F. Supp. 2d 740 (E.D. Ky. 2011); *T.S. v. Doe*, No. 5:10-CV-217-KSF, 2010 U.S. Dist. LEXIS 107088, *12 (E.D. Ky. Oct. 6, 2010)).

[9] It bears note that Rule 17.02 of the Kentucky Rules of Civil Procedure provides that a "married man or a married woman, regardless of age, may sue or be sued as a single person who has reached majority."  The statute of limitations is therefore not tolled for married infants because of their minority, and married infants must bring actions within the limitations period from the date of their marriage. *Wenneker v. Bailey*, 392 S.W.2d 453 (Ky. 1965); *Williamson v. Carr-Consolidated Biscuit Co.*, 313 Ky. 235, 230 S.W.2d 917 (1950); *Hicks v. Steele*, 309 Ky. 833, 219 S.W.2d 35 (1949). In view of this rule, Gannett submits that it would be inequitable under the circumstances to require a party under the age of eighteen to abide by a limitations period merely by virtue of their marital status, while excusing Mr. Sandmann, who secured sophisticated counsel from the outset both to protect his interests and wage a national public relations campaign on his behalf, from doing the same.

In its prior rulings, this Court dismissed as non-actionable claims that related to "hat-wearing teens" and other terms that referred generically to the group of students at the National Mall; inherently subjective opinion statements; and statements that rely on innuendo or assumptions to establish their defamatory meaning, such as allegations that the articles imply (but do not say) that Plaintiff engaged in racist behavior. *Sandmann*, 401 F. Supp. 3d at 791-797. The only statements that this Court has allowed to proceed are those that "state that plaintiff 'blocked' Nathan Phillips and 'would not allow him to retreat.'" *Sandmann*, RE 64, Page ID#: 861; *see also Sandmann v. WP Co., LLC*, No. 2:19-cv-00019, RE 75, Page ID# 1170 ("you have sliced this case down to its core and you have provided all the parties with the most efficient and relevant issues to litigate").

Yet, Plaintiff's FAC strays far beyond the scope of what this Court has said could give rise to a viable claim for defamation. Indeed, the FAC recycles the very same allegations — already rejected by this Court — from the initial round of defamation lawsuits launched by Plaintiff against other media defendants.

At a minimum, this Court should strike the following paragraphs, which have no remote relevance to the kinds of actionable statements that this Court has allowed to proceed in other cases, to Plaintiff's (meritless) attempt to establish that Defendants are the publishers of the articles in question, to Plaintiff's (insufficient) attempts to specify his damages, or to Plaintiff's causes of action and requests for relief: ¶¶ 1-150, 180-191. Moreover, to the extent the following paragraphs allege that the articles supposedly imply (but do not state) that Plaintiff engaged in racist behavior, those specific allegations should be stricken for the same reasons set forth by this Court in the *Washington Post* case: ¶¶ 187, 190, 191, 214, 347.

## CONCLUSION

For the foregoing reasons, Plaintiff's FAC against Defendants Gannett Co., Inc. and Gannett Satellite Information Network, LLC, should be dismissed.

19

Dated:  October 11, 2020          Respectfully submitted,

*s/ Michael P. Abate*
Jon L. Fleischaker
Michael P. Abate
KAPLAN JOHNSON ABATE & BIRD LLP
710 W. Main St., 4th Floor
Louisville, KY 40202
(502) 540-8280
jfleischaker@kaplanjohnsonlaw.com
mabate@kaplanjohnsonlaw.com

Michael J. Grygiel (admitted *pro hac vice*)
Cyndy E. Neidl (admitted *pro hac vice*)
Kelly L. McNamee (admitted *pro hac vice*)
GREENBERG TRAURIG, LLP
54 State Street, 6th Floor
Albany, New York 12207
(518) 689-1400
grygielm@gtlaw.com
neidlc@gtlaw.com
mcnameek@gtlaw.com

*Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 11, 2020, I filed the foregoing with the Court and served it upon opposing counsel by submitting it through the Court's CM/ECF system. All counsel of record are registered ECF users.

_s/ Michael P. Abate_____
Counsel for Defendant
