IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

**CIVIL ACTION NO. 2:20-CV-0026 (WOB-CJS)**

**NICHOLAS SANDMANN.**                                              **PLAINTIFF,**

**VS.**                        **MEMORANDUM OPINION AND ORDER**

**GANNETT CO., INC., and**
**GANNETT SATELLITE INFORMATION NETWORK, LLC,**            **DEFENDANTS.**

This matter is before the Court on the defendants' renewed motion to dismiss, (Doc. 36), plaintiff's response (Doc. 37), and the defendants' reply. (Doc. 38). The Court has carefully reviewed this matter and concludes that oral argument is unnecessary.

*Factual and Procedural Background*

This is one of several defamation lawsuits filed by Nicholas Sandmann in response to publications made about events that transpired at the Lincoln Memorial in Washington D.C. on January 18, 2019. (Doc. 1, 34). The instant complaint is again based on allegations of defamation. This time, however, Sandmann alleges that the defendants, Gannett Co., Inc. and Gannett Satellite Information Network (collectively "Gannett"), through its USA Today Network, published numerous reports of the events that transpired on January 18, 2019. (Doc. 34).

Sandmann filed his original complaint on March 2, 2020, against only Gannett Co. Inc. (Doc. 1). On May 29, 2020, Gannett filed its first motion to dismiss and strike portions of Sandmann's

1

complaint. (Doc. 18). In response, Sandmann filed an uncontested first amended complaint ("FAC"), adding Gannett Satellite Information Network, LLC. (Docs. 33-34). Gannett renewed its motion to dismiss and strike portions of the complaint. (Doc. 36).

***Analysis***

A.     **Failure to State a Claim**

   **1. Wrong Defendants Claim**

Gannett begins by arguing that dismissal is proper because Sandmann has twice sued the wrong defendants.[1] (Doc. 36 at 10). Sandmann's FAC details allegations that Gannett published false and defamatory statements through several of its wholly owned subsidiaries: *Cincinnati Enquirer*, *Detroit Free Press*, *USA Today*, *Louisville Courier-Journal*, and *Tennessean*. (Doc. 36 at 32).

Gannett argues that it is the wrong defendant because it did not publish the purportedly defamatory news articles, and Sandmann cannot hold it responsible for the independent acts of its subsidiaries unless he wishes to pierce the corporate veil (which he does not do). (Doc. 36 at 10). Sandmann argues that Gannett has been sued for publications of its subsidiaries and never asserted this defense.[2] (Doc. 37 at 7). He nevertheless clarifies that he

---

[1] First in the original complaint suing only Gannett Co., Inc., and now in the FAC, adding Gannett Satellite Information Network as a co-defendant.
[2] *See e.g., Young v. Gannett Satellite Information Network, Inc.*, 837 F.Supp.2d 758 (S.D. Ohio 2011) (plaintiff sued Gannett because Milford-Miami Advertiser, a newspaper to the *Cincinnati Enquirer* and owned by Gannett, published an allegedly defamatory story).

is not seeking to hold Gannett liable for the independent acts of its subsidiaries; instead, he is alleging that he seeks "to assess corporate responsibility against Gannett for Gannett's acts of publication, accomplished via its vast network of local outlets."[3] (*Id.* at 10).

The issue here is whether Sandmann must sue the subsidiaries individually or if it is proper to sue only the Gannett defendants. Gannett relies on *Stern v. News Corp.*, 2010 WL 5158635 (S.D.N.Y Oct. 14, 2010), for the proposition that it cannot be held liable for the publications of its subsidiaries.[4] (Doc. 36 at 12). Gannett's reliance on *Stern* is misguided.

Even without the Court taking judicial notice of the letter and websites, the face of the complaint clearly alleges that Gannett is liable—not out of association as the parent corporation of its subsidiaries—but based on Gannett's direct editorial control over the alleged defamatory publications. (Doc. 34 at ¶¶

---

[3] Sandmann also argues that the FAC contains facts that show Gannett was responsible for the publications, based on: (1) statements made on its websites (boasting that its USA Today Network is a singular organization); (2) the uniform template brand used across its websites; (3) the statements where it holds itself out to the public as a single company; and (4) the letter from its internal lawyer.

[4] In *Stern*, a plaintiff sued News Corporation (a national media company with multiple subsidiaries like Gannett) for defamation based on an article published by the *New York Post* concerning the plaintiff's legal threats against the paper. 2010 WL 5158635, at *1-2. News Corporation argued that it was not the proper defendant in the defamation suit arising out of the *New York Post*'s article because it could not be held liable for the tortious acts of its subsidiary's article. *Id.* at *4. Because News Corporation was not responsible for the publication of the article, the court agreed with News Corporation. *Id.* The court found that New York law does not allow a defendant to be held liable for defamatory statements made by a third party, and the plaintiff could not show that the *New York Post* was wholly dominated and controlled by News Corporation.

3

154-60). Therefore, taking these allegations as true, Gannett is the proper defendants to sue.[5] (*Id.*) As a result, this Court need not address whether Sandmann alleged sufficient facts to pierce the corporate veil.

## 2. First Amendment and Kentucky Law Concerning "Enterprise Liability" Theory

Gannett next argues that that the First Amendment and Kentucky law does not permit Sandmann to hold it liable on a theory of "enterprise liability." (*Id.* at 17). Gannett relies on statements Sandmann's attorney made during oral argument for the Washington Post. (Doc. 36 at 18 (citing *Sandmann v. WP Co., LLC*, Civil Action No. 2:19-cv-19, Doc. 75)).[6] The parties do not contest that Kentucky substantive law applies concerning Sandmann's defamation

---

[5] Gannett argues alternatively that it is entitled to the "wire service" defense. (Doc. 36 at 15). This fails, though, because this alleged defense is merely a means of establishing ordinary care for news outlets publishing articles from wire services. *O'Brien v. Williamson Daily News*, 735 F.Supp. 218, 225 (E.D. Ky. Mar. 16, 1990, *aff'd*, 931 F.2d 893 (6th Cir. 1991) (table). In *O'Brien*, the Associated Press acted as a wire service, meaning it gathered and distributed news for the primary benefit of multiple news retailers. *Id.* at 225. Here, unlike *O'Brien*, the *Cincinnati Enquirer*, *Courier-Journal*, *Detroit Press*, and *Tennessean* were not acting as a wire service for the *USA Today*. Instead, it is alleged that they were working with the *USA Today* (through Gannett) to write stories about the events that transpired on the Lincoln Memorial. (Doc. 34 at 156-60). Therefore, taking these facts as true, Gannett is not entitled to dismissal under the wire service defense and Sandmann properly sued Gannett.

[6] THE COURT: Okay. Now, listen carefully to this next question because it's important procedurally. Will you have evidence that can attribute any specific part of the damages to any specific defendant, or is it all one big ball of wax? Is all this publicity together is affecting him, or can you point out they had to move out of their house and that was the fault of this Defendant 1 or that he was denied from participating in his school, and that was Defendant 2? It's my impression that it was all pretty general. Is that correct?

MR. WOOD: I agree with your impression. It would be more—there may be some specific slices, but the overall forest is, I believe, consistent with Your Honor's impression that it's not separable by a defendant or by statement. Each statement is unique, and the jury will have to evaluate the whole of the damage as to each defendant.

4

claim. Gannett argues that Sandmann fails to plead the elements because he does not allege that it "actually *caused* the harm he alleges" to tie his damages to a specific harm. (Doc. 38 at 7).

To establish a prima facie case for defamation, a plaintiff must show that the defendant published a statement that harmed her reputation in the community. *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 793 (Ky. 2004). Gannett is correct that the Supreme Court does not permit liability without fault by the defendant. (Doc. 36 at 6); *see Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349-50 (1974). That is not the case here, though.

Taking Sandmann's allegations as true, he is alleging that through Gannett's oversight and lack of investigation, it rushed the story about the incident at the Lincoln Memorial (negligently), causing him to suffer from physical and emotional injuries because of this reporting. *See* (Doc. 37 at 3 (citing Doc. 34 at ¶¶ 346-61)). Therefore, Gannett is not entitled to dismissal.

B. **Remaining Defenses**

Gannett's remaining claims are also without merit. First, Gannett argues dismissal is warranted because Sandmann did not file this defamation claim within the one-year statute of limitations. (Doc. 36 at 20). But as Gannett concedes, this Court has already rejected this argument.[7] *See Sandmann v. The New York*

---

[7] As this Court has found, Sandmann's complaint is not barred by the statute of limitations because Ky. Rev. Stat. § 413.170(a) tolled his claim because Sandmann had not yet reached the age of eighteen. Like other defendants, Gannett

5

*Times Company*, Cov. Civil Action No. 2:20-cv-23, at Doc. 27; *Sandmann v. CBS News, Inc., et al*, 2:20-cv-24, at Doc. 33; *Sandmann v. ABC News, Inc., et al.*, 2:20-cv-25, at Doc. 36; *Sandmann v. Rolling Stones, LLC, et al.*, 2:20-cv-27, at Doc. 35. Therefore, this defense is without merit.

Second, as alternative relief, Gannett asks this Court to strike portions of the FAC that this Court has already found non-actionable because they violate Rule 8.[8] (Doc. 36 at 22). This argument also fails because this Court did not strike any paragraphs it found non-actionable in its other Opinions, and the paragraphs help to explain pertinent elements to Sandmann's defamation claims.[9] Therefore, Gannett has not shown that

---

relies erroneously on *Tallman v. City of Elizabethtown*, No. 20006-CA-002542, 2007 WL 3227599 (Ky. Ct. App. Nov. 2, 2007). However, a reading of this decision reveals that the Court considered the litigation before it to be highly unusual, and it noted that its ruling was made in light of "the procedural history of the case." Again, no such history exists here. As Gannett recognizes, when the Kentucky Supreme Court has not ruled on an issue, the federal court sitting in diversity must predict how it would rule. *Kepley v. Lanz*, 715 F.3d 969, 972 (6th Cir. 2013). This Court is unpersuaded that the Kentucky Supreme Court would agree with *Tallman* because it cites no authority for its holding, which conflicts with the plain language of the savings statute (since the statute makes no exception to the tolling of the limitations period for claims brought by a minor).

[8] Paragraphs 1-150, 180-191, 214, and 347. (Doc. 36 at 23).

[9] Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." As Gannett implies, this rule is used to reinforce the requirements of Rule 8(d), but "are viewed with disfavor and are not frequently granted." *Operating Engineers Local 324 Health Care Plan v. G. & W Const. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015) (citations omitted). A motion to strike is a "drastic remedy to be resorted to only when required for the purposes of justice" and "when the pleading to be stricken has no possible relation to the controversy." *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 821 (6th Cir. 1953).

6

Sandmann's allegations were "redundant, immaterial, impertinent, or scandalous," and its motion to strike is denied.

Thus, having reviewed this matter, and the Court being advised,

IT IS ORDERED that the defendants' motion to dismiss (Doc. 36) be, and is hereby, **DENIED**.

This 8th day of January 2021.



Signed By:
*William O. Bertelsman* WOB
United States District Judge