**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

| | | |
|---|---|---|
| NICHOLAS SANDMANN, by and through his parents and natural guardians, TED SANDMANN and JULIE SANDMANN, | : : : : | CASE NO. 2:20-CV-00023-WOB-CJS |
| Plaintiff, | : : | |
| v. | : : | |
| THE NEW YORK TIMES COMPANY d/b/a THE NEW YORK TIMES, | : : : | |
| Defendant. | : : | |
| NICHOLAS SANDMANN, by and through his parents and natural guardians, TED SANDMANN and JULIE SANDMANN, | : : : : | CASE NO. 2:20-CV-00024-WOB-CJS |
| Plaintiff, | : : | |
| v. | : : | |
| CBS NEWS, INC., et al., | : : | |
| Defendants. | : : | |
| NICHOLAS SANDMANN, by and through his parents and natural guardians, TED SANDMANN and JULIE SANDMANN, | : : : : | CASE NO. 2:20-CV-00025-WOB-CJS |
| Plaintiff, | : : | |
| v. | : : | |
| ABC NEWS, INC., et al., | : : | |
| Defendants. | : : | |

NICHOLAS SANDMANN, by and               :        CASE NO. 2:20-CV-00026-WOB-CJS
through his parents and natural guardians,  :
TED SANDMANN and JULIE                   :
SANDMANN,                                :
                                         :
          Plaintiff,                     :
                                         :
v.                                       :
                                         :
GANNETT CO., INC. AND GANNETT            :
SATELLITE INFORMATION                    :
NETWORK, LLC,                            :
                                         :
          Defendants.                    :
NICHOLAS SANDMANN, by and               :        CASE NO. 2:20-CV-00027-WOB-CJS
through his parents and natural guardians,  :
TED SANDMANN and JULIE                   :
SANDMANN,                                :
                                         :
          Plaintiff,                     :
                                         :
v.                                       :
                                         :
ROLLING STONE, LLC, et al.,              :
                                         :
          Defendants.                    :
                                         :

## DEFENDANTS' REPLY BRIEF IN
## FURTHER SUPPORT OF MOTION TO STRIKE
## REPORT AND TESTIMONY OF CRAIGE ROBERTS

Robert B. Craig (KBA 15590)              Nathan Siegel (*pro hac vice*)
TAFT STETTINIUS & HOLLISTER LLP          Meenakshi Krishnan (*pro hac vice*)
50 East RiverCenter Blvd., Suite 850     DAVIS WRIGHT TREMAINE LLP
Covington, KY 41011-1683                 1301 K St. NW, Suite 500
Phone: (859) 547-4300                    Washington, DC 20005
Fax: (513) 381-6613                      Phone: (202) 973-4237
craigr@taftlaw.com                       Fax: (202) 973-4437
                                         nathansiegel@dwt.com
                                         meenakshikrishnan@dwt.com

                                         *Counsel for Defendants*
                                         *ABC News, Inc., ABC News Interactive,Inc.,*
                                         *and The Walt Disney Company*

J. Stephen Smith (KBA 86612)
Darren W. Ford (KBA 95373)
GRAYDON HEAD & RITCHEY LLP
2400 Chamber Center Drive
Suite 300
Ft. Mitchell, KY 41017
Phone: (859) 578-3070
Fax: (859) 578-3071
ssmith@graydon.law
dford@graydon.law

Jared A. Cox
DENTONS BINGHAM
  GREENEBAUM LLP
101 South Fifth Street, Suite 3500
Louisville, KY 40202
Phone: (502) 589-4200
Jared.cox@dentons.com

John C. Greiner (*pro hac vice*)
GRAYDON HEAD & RITCHEY LLP
312 Walnut Street, Suite 1800
Cincinnati, OH 45202
Phone: (513) 629-2734
Fax: (513) 333-4316
jgreiner@graydon.law

*Counsel for Defendant The New York Times
Company d/b/a The New York Times*

Natalie J. Spears (*pro hac vice*)
Gregory R. Naron (*pro hac vice*)
DENTONS US LLP
233 South Wacker Drive, Suite 5900
Chicago, IL 60606
Phone: (312) 876-8000
Natalie.spears@dentons.com
Gregory.naron@dentons.com

Jessica Laurin Meek (*pro hac vice*)
DENTONS BINGHAM
  GREENEBAUM LLP
10 West Market Street, Suite 2700
Indianapolis, IN 46204
Phone: (317) 635-8900
Jessica.meek@dentons.com

*Counsel for Defendants CBS News Inc.,
ViacomCBS Inc., and CBS Interactive Inc.*

Jon L. Fleischaker
Michael P. Abate
KAPLAN JOHNSON ABATE
  & BIRD LLP
710 W. Main St., 4th Floor
Louisville, KY 40202
Phone: (502) 540-8280
jfleischaker@kaplanjohnsonlaw.com
mabate@kaplanjohnsonlaw.com

Michael J. Grygiel (*pro hac vice*)
Kelly L. McNamee (*pro hac vice*)
Candra M. Connelly (*pro hac vice*)
GREENBERG TRAURIG, LLP
54 State Street, 6th Floor
Albany, NY 12207
Phone: (518) 689-1400
Fax: (518) 649-1499
grygielm@gtlaw.com
mcnameek@gtlaw.com
connellyc@gtlaw.com

*Counsel for Defendants Gannett Co., Inc. and
Gannett Satellite Information Network, LLC*

Theresa A. Canaday
Samuel W. Wardle
FROST BROWN TODD LLC
400 West Market Street, 32nd Floor
Louisville, KY 40202
Phone: (502) 589-5400
Fax: (502) 587-1087
tcanaday@fbtlaw.com
swardle@fbtlaw.com

Michael E. Nitardy
FROST BROWN TODD LLC
7310 Turfway Road, Suite 210
Florence, KY 41042
Phone: (859) 817-5900
Fax: (859) 283-5902
mnitardy@fbtlaw.com

Kevin T. Shook (*pro hac vice*)
FROST BROWN TODD LLC
10 West Broad Street
Columbus, OH 43215
Phone: (614) 464-1211
Fax: (614) 464-1737
kshook@fbtlaw.com

Ryan W. Goellner (*pro hac vice*)
FROST BROWN TODD LLC
301 East Fourth Street, Suite 3300
Cincinnati, OH 45202
Phone: (513) 651-6800
Fax: (513) 651-6981
rgoellner@fbtlaw.com

*Counsel for Defendants Rolling Stone, LLC
and Penske Media Corporation*

ACTIVE 63856782v4

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ............................................................................................................................... 2

    I.   DR. ROBERTS OFFERS LAY OPINIONS MASQUERADING AS EXPERT
         TESTIMONY IN VIOLATION OF RULE 702 ............................................................ 2

        A.  Dr. Roberts' Standardless Analysis Is Devoid of Evidentiary Reliability.................... 2

        B.  Video Analysis Is "Not a Thing." ................................................................................. 4

        C.  Dr. Roberts Ignored Obvious Alternative Explanations — Her Own Client's
            Deposition Testimony. ................................................................................................ 5

        D.  The Proposed Expert Report and Testimony Should Be Excluded Because They
            Were Produced Solely For Litigation Purposes........................................................... 5

    II.  THE "COMPLEX LANGUAGE" CASES CITED BY PLAINTIFF ARE
         INAPPOSITE ................................................................................................................ 9

    III.  THE OPPOSITION CONFIRMS THAT THE PROFFERED EVIDENCE IS
          PROHIBITED BY RULE 704 ...................................................................................... 11

CONCLUSION .......................................................................................................................... 13

i

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alfa Corp. v. Oao Alfa Bank*,
    475 F. Supp. 2d 357 (S.D.N.Y. 2007) ........................................................................11

*Aveda Corp. v. Evita Marketing, Inc.*
    706 F. Supp. 1419 (D. Minn. 1989) ................................................................... 10-11

*Bennett v. Cisco Systems, Inc.*,
    63 F. App'x 202 (6th Cir. 2003) ............................................................................10

*Berry v. City of Detroit*,
    25 F.3d 1342 (6th Cir. 1994) .........................................................................12, 13

*Brueggemeyer v. American Broadcasting Companies, Inc.*,
    684 F. Supp. 452 (N.D. Tex. 1988) ..........................................................................9

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    43 F.3d 1311 (9th Cir. 1995) .........................................................................7, 8, 9

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993) ................................................................................2, 3, 4, 7

*EEOC v. Beauty Enterprises, Inc.*,
    361 F. Supp. 2d 11 (D. Conn. 2005) ........................................................................11

*United States ex rel. Free v. Peters*,
    806 F. Supp. 705 (N.D. Ill. 1992) ..........................................................................11

*J & J Snack Foods Corp. v. Earthgrains Co.*,
    220 F. Supp. 2d 358 (D.N.J. 2002) ........................................................................10

*Johnson v. Manitowoc Boom Trucks, Inc.*,
    406 F. Supp. 2d 852 (M.D. Tenn. 2005) ...................................................................8

*Johnson v. Manitowoc Boom Trucks, Inc.*,
    484 F.3d 426 (6th Cir. 2007) ...............................................................................6, 7

*Kentucky Speedway, LLC v. National Association of Stock Car Auto Racing, Inc.*,
    No. 05-138, 2008 WL 113987 (E.D. Ky. Jan. 7, 2008), *aff'd*, 88 F.3d 908 .................4, 5, 6, 8

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999) ..........................................................................................4, 7

*McCabe v. Rattiner*,
    814 F.2d 839 (1st Cir. 1987) ................................................................................9

*Mid-State Fertilizer Co. v. Exchange National Bank*,
    877 F.2d 1333 (7th Cir. 1989) ................................................................13

*Mike's Train House, Inc. v. Lionel, L.L.C.*,
    472 F.3d 398 (6th Cir. 2006) ..........................................................6, 8, 9

*Nelson v. Tennessee Gas Pipeline Co.*,
    243 F.3d 244 (6th Cir. 2001) ................................................................7

*Philadelphia Newspapers, Inc. v. Hepps*,
    475 U.S. 767 (1986) ............................................................................6

*Ralston v. Garbedian*,
    No. 19-1539, 2022 U.S. Dist. LEXIS 49 (E.D. Pa. Jan. 3, 2022) ...........................13

*Ross v. Rothstein*,
    92 F. Supp. 3d 1041 (D. Kan. 2014) ................................................................12

*Smelser v. Norfolk Southern Railway Co.*,
    105 F.3d 299 (6th Cir. 1997) ................................................................9

*Sparton Corp. v. United States*,
    77 Fed. Cl. 1 (2007) ................................................................12, 13

*Tilton v. Capital Cities/ABC, Inc.*,
    938 F. Supp. 751 (N.D. Okla. 1995), *aff'd*, 95 F.3d 31 (10th Cir. 1996) ................9

*United States v. Scop*,
    846 F.2d 135 (2d Cir. 1988) ................................................................12, 13

*Wilson v. Scripps-Howard Broadcasting Co.*,
    642 F.2d 371 (6th Cir. 1981) ................................................................6

*World Boxing Council, Inc. v. Cosell*,
    715 F. Supp. 1259 (S.D.N.Y. 1989) ................................................................9

*Yeiser v. DG Retail, LLC*,
    No. 18-cv-0320, 2021 U.S. Dist. LEXIS 73365 (D. Colo. Apr. 16, 2021) ..............10

**State Cases**

*Dermody v. Presbyterian Church U.S.A.*,
    530 S.W.3d 467 (Ky. Ct. App. 2017) ................................................................11

*Greene v. Philadelphia Media Network, Inc.*,
    40 Pa. D.&C. 5th 157, 2014 Phila. Ct. Com. Pl. LEXIS 236 (Pa. Com. Pl.
    Phila. Cnty. Aug. 1, 2014) ................................................................9

*McCall v. Courier-Journal & Louisville Times Co.*,
  623 S.W.2d 882 (Ky. 1981) ............................................................................6

*Seropian v. Forman*,
  652 So. 2d 490 (Fla. 4th Dist. Ct. App. 1995) ...........................................9

*Wadhams v. Board of County Commissioners*,
  501 So. 2d 120 (Fla. 2d DCA 1987), *rev'd on other grounds*, 567 So. 2d 414
  (Fla. 1990)...................................................................................................11

*Weller v. ABC, Inc.*,
  232 Cal. App. 3d 991 (Cal. Ct. App.1991) .........................................9, 10

**Rules**

Fed. R. Civ. P. 56 .............................................................................9, 12, 13

Fed. R. Evid. 702 .................................................................................. *passim*

Fed. R. Evid. 704 ......................................................................2, 11, 12, 13

**Constitutional Provisions**

U.S. Const. amend. 1 ........................................................................................6

**Other Authorities**

Ainsworth, Janet E., *Linguistics as a Knowledge Domain in the Law*, 54 DRAKE
  L. REV. 651 (2006)............................................................................................3

iv

# INTRODUCTION

Defendants ABC News, CBS News, Gannett Co. and Gannett Satellite Information Network, The New York Times, and Rolling Stone (collectively, "Defendants")[1] submit this reply brief in response to Plaintiff Nicholas Sandmann's opposing memorandum (the "Opposition") and in further support of their motion to strike the Report and deposition testimony of proposed expert witness Dr. Craige Roberts from the summary judgment record.[2]

Much of the Opposition consists of defending the virtues of linguistics as an academic discipline and chastising Defendants for their "dismissive, know-nothing attitude" and "disrespect[ing] linguistics," a field about which they "know[] very little." (Opp. 11, 12) Plaintiff's accusatory rhetoric sidesteps the point. Defendants' motion takes no issue with the field of linguistics. Rather, the point is that Dr. Roberts' testimony proffered in this case is not reliable evidence grounded in the discipline of linguistics — it is that of a layperson watching videos, as to which she admits she has zero expertise, and merely offers her subjective impressions about what they supposedly show. Nothing in Plaintiff's submission comes close to satisfying the relevance and reliability requirements governing the admissibility of expert witness testimony. Indeed, Plaintiff gives barely a passing glance to the longstanding body of case law cited by

---

[1] The Defendants include ABC News, ABC Interactive News, Inc., and The Walt Disney Company ("ABC News"); CBS News Inc., ViacomCBS Inc. and CBS Interactive Inc. ("CBS News"); Gannett Co. and Gannett Satellite Information Network, LLC ("Gannett"); The New York Times Company ("The New York Times"); and Rolling Stone, LLC and Penske Media Corporation ("Rolling Stone").

[2] Nicholas Sandmann's Memorandum in Opposition to Defendants' Motion to Strike (Dkt. No. 82 in his lawsuit against Gannett, Case No. 2:20-cv-00026) is cited herein by page as "(Opp. ___)." Identical copies of the Opposition were filed in each of the Defendants' cases — ABC News, Case No. 2:20-cv-00025 (Dkt. No. 84); CBS News, Case No. 2:20-cv-00024 (Dkt. No. 76); The New York Times, Case No. 2:20-cv-00023 (Dkt. No. 69); and Rolling Stone, Case No. 2:20-cv-00027 (Dkt. No. 76). Further, Nicholas Sandmann's Reply in Support of Motion for Partial Summary Judgment (Dkt. No. 81 in the Gannett case) is referred to by page as "(Reply _____)." Again, identical copies of the Reply were filed with respect to each Defendant: ABC News (Dkt. No. 81); CBS News (Dkt. No. 75); The New York Times (Dkt. No. 68); and Rolling Stone (Dkt. No. 75).

Defendants uniformly disallowing the attempted rehabilitation of deficient defamation claims through expert linguistic testimony.

The Opposition does nothing to dispel the conclusion that Plaintiff has retained Dr. Roberts solely for the litigation purpose of trying to stave off summary judgment by countering his sworn explanations of his actions and intention relative to his encounter with Nathan Phillips on the steps of the Lincoln Memorial.  At the end of the day, having failed to conduct any other discovery, Plaintiff is transparently attempting to overcome that dispositive evidentiary obstacle by seeking to have Dr. Roberts' opine that the Blocking Statements are materially false.  As explained below, Federal Rules of Evidence 702 and 704 prohibit her from doing so.

**ARGUMENT**

**I.   DR. ROBERTS OFFERS LAY OPINIONS MASQUERADING AS EXPERT TESTIMONY IN VIOLATION OF RULE 702**

### A.   Dr. Roberts' Standardless Analysis Is Devoid of Evidentiary Reliability.

It hardly requires a "hyper-technical application of the *Daubert* factors" (Opp. 7) to exclude Dr. Roberts' Report and testimony from the summary judgment record.  Contrary to Plaintiff's claims, Dr. Roberts' conclusions do not depend on her "erudition" (*id*. 1) or "education" (*id*.), nor are they "based on specialized knowledge" (*id*. 7) acquired through her professional training and expertise.  Rather, her opinions were fashioned solely from watching the stipulated videos — which, as Dr. Roberts admitted, she was no more qualified to do than anyone else and which did not require any professional expertise.  (R.D. 199:7-23, 207:2-12)[3]  Because, as underscored by her own testimony, her opinions are no different than those capable of being offered by any lay

---

[3]   The deposition transcripts of Dr. Roberts and Plaintiff are cited herein by page and line, respectively, as "(R.D.____)" and "(S.D. ____)."

witness, they do not qualify as expert testimony and are inadmissible under Federal Rule of Evidence 702.

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 594 (1993), identifies the "known or potential rate of error" as a factor a court may consider in determining the reliability of expert testimony under Rule 702. Plaintiff brushes away this factor as having no "plausible application to a linguist nor to the learned discipline of linguistics." (Opp. 3) However, this claim is contradicted by the recognition on the very next page of his brief that "linguists' hypotheses about language make predictions that can be tested by external data *and that these hypotheses will either be corroborated or not by that data*." (*id*. 4) (quoting Janet E. Ainsworth, *Linguistics as a Knowledge Domain in the Law*, 54 Drake L. Rev. 651, 658 (2006), but omitting italicized portion of sentence).[4] In a notable departure from generally accepted analytical theories within the professional linguistic community, Dr. Roberts' Report makes no "predictions that fit linguistic data," and offers no conclusions that can be corroborated by external data. *Id*. at 659. While the field of linguistics no doubt employs "well-accepted modes of analysis" (Opp. 3) and "established methodologies" (*id*. 4) subject to review in "peer-reviewed publications" (*id*.), those indicia of reliability are nowhere to be found here.

Instead, Dr. Roberts simply watched videos and offered her *ad hoc* personal impressions about what she saw as the sole basis for opining about the purported material falsity of the Blocking Statements. Her conclusions therefore lack "a reliable basis in the knowledge and experience of

---

[4]    Plaintiff's selective quotations from Professor Ainsworth's scholarship ignore that Professor Ainsworth endorses *Daubert*'s application to evaluate the admissibility of expert linguistic testimony — the very outcome Plaintiff goes to such great lengths to short-circuit. Ainsworth, 54 Drake L. Rev. at 659 ("Because the field of linguistics operates under the methodologies and assessment standards of positivist science, testing proffered linguistics evidence under the *Daubert* standard should appropriately measure its validity.").

h[er] discipline." *Daubert*, 509 U.S. at 592.   The proposed Report has nothing to do with "specialized observations, the specialized translation of those observations into theory, a specialized theory itself, or the application of such a theory in a particular case." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999).   In excluding an expert witness report from consideration on summary judgment, and in reasoning equally applicable here, this Court summarized the reasons this type of standardless approach does not come anywhere near satisfying the reliability requirements of Rule 702:

> It has not been tested; has not been subjected to peer review and publication; there are no standards controlling it; and there is no showing that it enjoys general acceptance within the scientific community.

*Kentucky Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*, Civil Action No. 05-138, 2008 WL 113987, at *4 (E.D. Ky. Jan. 7, 2008) (Bertelsman, J.), *aff'd*, 88 F.3d 908 (6th Cir. 2009).

## B.  Video Analysis Is "Not a Thing."

Plaintiff asserts that video analysis "is not a thing."  (Opp. 9)  But that is precisely what Dr. Roberts is doing here by any fair understanding of the term.  (R.D. 120:3-7, 198:16-25, 199:1-23)  Indeed, what she saw on the videos is the sole basis for her opinions.  (R.D. 78:25, 79:1-24)  Dr. Roberts is not, as Plaintiff suggests, merely "assess[ing] the meaning of those words in that context."[5] (Opp. 10)  Rather, she reviewed a self-selected portion of the evidence and is opining about whether those words were true or false. Dr. Roberts should be prohibited from introducing her personal and subjective observations based on this analysis because, as she conceded, anyone can see with their own eyes what is depicted in the videos.  (R.D. 207:10-12) ("I think we all — that's what we look at when we look at a video.  We know what's there. . . . *It*

---

[5]   And as discussed in Point II below, even if that was all Dr. Roberts was being asked to do her testimony would be inadmissible because courts have repeatedly held that is not a proper subject for linguistic testimony in defamation cases and, further, this is not a case in which the words at issue have any complex or specialized meaning.

*is not expertise.*") (emphasis supplied).  To hold otherwise would render Rule 702's reliability requirements chimerical by the simple expedient of presenting a lay witness in expert's clothing.

C.  **Dr. Roberts Ignored Obvious Alternative Explanations — Her Own Client's Deposition Testimony.**

Plaintiff excuses Dr. Roberts' failure to account for Plaintiff's testimony establishing the truth of the Blocking Statements as necessary to maintain professional objectivity.  (Opp. 10)  On its face, this argument makes no sense; consideration of admissible (and crucial) evidence in the summary judgment record would be part of any legitimate scientific inquiry and should not create "bias" in the mind of a valid expert.  And this conspicuous omission from her Report cannot be explained away by criticizing Defendants for "misunderstand[ing] the discipline of linguistics[.]" (*Id*.)  The upshot of Dr. Roberts' willful blindness is that, by disregarding critical information, she failed to apply her method of analysis in a reliable way.  Instead, she reached a preordained result by skewing her approach to ignore evidence that did not fit her conclusions.  One of the factors of a Rule 702 inquiry is "[w]hether the expert has adequately accounted for obvious alternative explanations."  Advisory Comm. Notes to Fed. R. Evid. 702.  Here, Dr. Roberts' testimony falls far short: she *purposefully avoided* considering contradictory evidence in the form of her own client's admissions that he purposefully stood in Nathan Phillips's way and thus reached an "impasse" with him on the steps of the Lincoln Memorial.  (S.D. 175:3-14, 180:3-4, 263:10)  She merely assumes this information out of the analysis, which vitiates the reliability of her conclusions.

D.  **The Proposed Expert Report and Testimony Should Be Excluded Because They Were Produced Solely For Litigation Purposes.**

As this Court has noted, the Sixth Circuit

> examines an expert's opinion by reviewing its context: whether the opinion naturally and directly grows out of research previously conducted independently of the litigation in question, or whether the expert developed the

opinion just for the purpose of testifying, which does not offer the same objective proof that the research comports with the dictates of good science.

*Kentucky Speedway, LLC*, 2008 WL 113987, at *3.

The context in which Dr. Roberts' Report was issued is illuminating. Plaintiff's counsel hired Dr. Roberts on September 21, 2021 (R.D. 221:19-25, 222:1-5) — exactly a week after Plaintiff testified that he intentionally stood in Nathan Phillips' path at the Lincoln Memorial to send the pointed message that he and his fellow CovCath students would not be intimidated. (S.D. 175:10-14; 176:15-20) Along with the other factors discussed above, the timing of her retention reflects a transparent attempt to overcome the manifest evidentiary impediment created by Plaintiff's admission, which is fatal to his ability to prove the material falsity of the Blocking Statements, as the First Amendment requires. *Phila. Newspapers, Inc. v. Hepps*, 475 U.S. 767, 777 (1986); *Wilson v. Scripps-Howard Broad. Co.*, 642 F.2d 371, 375 (6th Cir. 1981); *McCall v. Courier J. & Louisville Times Co.*, 623 S.W.2d 882, 894-95 (Ky. 1981).

In her deposition, Dr. Roberts acknowledged that she has no specialized training or expertise in video analysis (R.D. 45:22-25, 46:1-2, 134:13-21), has never before reviewed videos in providing expert testimony (*id*. 57:11-14), and has never published anything in her academic work involving the analysis of video of live events (*id*. 47:22-25; 48:1-7). Thus, it cannot be said that Dr. Roberts' proffered Report "relates to matters grown naturally and directly out of [her] own research," because it has instead "been developed for the purposes of litigation." *Mike's Train House, Inc. v. Lionel, L.L.C.*, 472 F.3d 398, 408 (6th Cir. 2006). Careful judicial scrutiny of Plaintiff's proposed expert witness testimony is therefore required. *Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 434 (6th Cir. 2007) (excluding expert testimony and stating that "[t]his Court has recognized for some time that expert testimony prepared solely for purposes of litigation,

as opposed to testimony flowing naturally from an expert's line of scientific research or technical work, should be viewed with some caution.").

To salvage this improper testimony, Plaintiff argues that *Kumho Tire* introduced a flexibility that marks a retrenchment from *Daubert* by loosening the requirements for the admissibility of expert testimony from "non-hard-science expert witnesses."[6] (Opp. 2) This misreads the Supreme Court's *Kumho Tire* decision, which reaffirmed the importance of a trial court's gatekeeping function to exclude unreliable evidence by extending it to *all* expert testimony, both scientific and non-scientific alike. 526 U.S. at 147 (*Daubert* "applies to all expert testimony"); *see also* Advis. Comm. Notes to Fed. R. Evid. 702. Nothing in *Kumho Tire* eliminates the requirement that an expert's opinions must be reliable. Indeed, *Kumho Tire* supports this Court's consideration of factors not mentioned by the Supreme Court in *Daubert*, including that Dr. Roberts' Report was formulated for use in this litigation. *Nelson v. Tennessee Gas Pipeline Co.*, 243 F.3d 244, 252 (6th Cir. 2001) ("If anything, *Kumho* supports the magistrate judge's consideration of factors not mentioned by the Supreme Court, including the fact that [the expert's] study was conducted and the expert['s] opinions were formed for purposes of litigation."); *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995) ("*Daubert II*") (emphasizing that development of expert testimony for litigation purposes is a "very significant fact to be considered"), *on remand from* 509 U.S. 579 (1993). Plaintiff's argument has it backwards: where, as here, "a proposed expert is a 'quintessential expert for hire,' then it seems well within a trial judge's discretion to apply the *Daubert* factors with greater rigor" in evaluating the relevance and reliability of the proffered testimony. *Johnson*, 484 F.3d at 435 (footnote omitted).

---

[6]   Plaintiff's assertion that "Dr. Roberts is not a scientist" (Opp. 2) is flatly contradicted by her deposition testimony. R.D. 19:18-20 ("Well, *we are scientists* so we have certain empirical methodologies that we use to study the ways in which we convey meaning.") (emphasis added).

The circumstances of Dr. Roberts' retention here — specifically, Plaintiff's need to evade the dispositive impact of his own admissions — underscore that her opinions were "conceived, executed, and invented solely in the context of this litigation." *Johnson v. Manitowoc Boom Trucks, Inc.*, 406 F. Supp. 2d 852, 865-66 (M.D. Tenn. 2005), *aff'd*, 484 F.3d 426, 435-36 (excluding expert testimony where party "all but concedes that without the testimony of [expert], he cannot survive summary judgment").[7] Tellingly, her acknowledgment that neither her method of analysis nor her conclusions required any professional training or expertise as a linguist (R.D. 199:7-23, 207:2-12) reinforce that they were driven by litigation imperatives. *Mike's Train House*, 472 F.3d at 408 ("the record indicates . . . that [expert] not only created his report for the purposes of litigation, but that he created the precise methodology at issue for that purpose as well"); *Kentucky Speedway*, 2008 WL 113987, at *4 (excluding report where expert fashioned his own version of test for use in litigation).

"If the proffered expert testimony is not based on independent research, the party proffering it must come forward with other objective, verifiable evidence" supporting its reliability.[8] *Daubert*

---

[7] In yet one more last-ditch maneuver aimed at evading his own testimony, Plaintiff even goes so far as dismissing it as mere speculation and "imaginative answers" supposedly elicited by the alleged "pushing and bullying" of the counsel asking him questions. (Reply 2) Defendants refer the Court to the transcript, which speaks for itself. Plaintiff's testimony about how and why he stood in Phillips' way ratified and elaborated his own words explaining the event in the contemporaneous texts Plaintiff exchanged with friends shortly after the encounter happened — there was nothing "speculative" about it, either then or now. (S.D. 174:25, 175:1-25, 176:1-20, 180:10-25, 181:1-4; N.S.001814 (Ex. 11) and N.S.000129 (Ex.12)) Defendants have never claimed that Plaintiff admits to the description of his conduct as "blocking." The point is that if treated as statements of fact, then the *facts* he acknowledges establish the gist of the Blocking Statements as accurate and even literally true. Joint Mem. at 43-49. Indeed, Plaintiff's quotations from his own testimony, reiterating his perception that Phillips was trying to intimidate the students, are consistent with everything Defendants have cited from his deposition. *See* Reply 4-5.

[8] In contrast to Dr. Roberts' Report, "independent research carries its own indicia of reliability, as it is conducted, so to speak, in the usual course of business and must normally satisfy a variety of standards to attract funding and institutional support." *Daubert II*, 434 F.3d at 1317. As her testimony makes clear, Dr. Roberts does not watch videos in the usual course of her academic undertakings and the only source of funding for her work here is Plaintiff's counsel.

*II*, 43 F.3d at 1318-19.  Plaintiff has failed to do so, choosing instead to make vacuous, sweeping statements like "[t]he study of linguistics is a serious academic discipline."  (Opp. 8)  But this provides the Court no basis to conclude that *this* proffered evidence is reliable.  Dr. Roberts' Report and testimony should therefore be stricken from the Rule 56 motion record.  *Smelser v. Norfolk S. Ry. Co.*, 105 F.3d 299, 303 (6th Cir. 1997) (reversing trial court and excluding expert witness testimony based, in part, on prepared-for-litigation factor); *Mike's Train House*, 472 F.3d at 408 (excluding expert's report prepared for litigation purposes); *Daubert II*, 43 F.3d at 1317 (holding expert testimony inadmissible and noting that an expert's "normal workplace" is "not the courtroom or the lawyer's office").

## II.   THE "COMPLEX LANGUAGE" CASES CITED BY PLAINTIFF ARE INAPPOSITE

In support of their motion to strike Dr. Roberts' testimony, Defendants have cited numerous cases in which courts have barred expert testimony from professional linguists in defamation cases for failure to satisfy Rule 702's requirements of relevance and reliability.  *Tilton v. Capital Cities/ABC, Inc.*, 938 F. Supp. 751 (N.D. Okla. 1995), *aff'd*, 95 F.3d 31 (10th Cir. 1996); *McCabe v. Rattiner*, 814 F.2d 839 (1st Cir. 1987); *Brueggemeyer v. Am. Broad. Cos.*, 684 F. Supp. 452 (N.D. Tex. 1988); *World Boxing Council, Inc. v. Cosell*, 715 F. Supp. 1259 (S.D.N.Y. 1989); *Greene v. Phila. Media Network, Inc.*, 40 Pa. D.&C. 5th 157, 2014 Phila. Ct. Com. Pl. LEXIS 236 (Pa. Com. Pl. Phila. Cnty. Aug. 1, 2014); *Seropian v. Forman, Inc.*, 652 So. 2d 490 (Fla. 4th Dist. Ct. App. 1995).  In attempting to cast aside this overwhelming weight of authority, Plaintiff cavalierly pronounces that this area of law "is in development."  (Opp. 6)  Yet, the *only* case Plaintiff cites to prop up the admissibility of Dr. Roberts' proposed testimony is *Weller v. ABC, Inc.*, 232 Cal. App. 3d 991, 1008 (Cal. Ct. App. 1991), a California state case not binding on this Court in which an expert linguist was allowed to testify at trial by "identify[ing] and explain[ing]

9

how certain rhetorical devices or patterns of speech convey implicit meaning." That is a far cry

from Dr. Roberts' opinions here, which do not address rhetorical devices or patterns of speech, but

rather are being offered on the issue of material falsity. That issue has nothing to do with

linguistics, and no case cited by anyone has ever admitted the testimony of a linguist for that

purpose in a defamation case. Moreover, both parties have presented that issue to the Court as one

that it may resolve as a matter of law on summary judgment. *Bennett v. Cisco Sys., Inc.*, 63 F.

App'x 202, 207 (6th Cir. 2003) (affirming trial court's grant of summary judgment because there

was no "genuine issue as to the material falsity of any of the alleged defamatory statements");

*Yeiser v. DG Retail, LLC*, No. 18-cv-0320, 2021 U.S. Dist. LEXIS 73365, at *19 (D. Colo. Apr.

16, 2021) ("Whether a statement was materially false . . . is a question of law which may be

resolved at the summary judgment stage."). Notably, *Weller* was decided in 1991, and does not

evidence any "development" in the law since the cases Defendants cite were decided.

Every other case Plaintiff cites had nothing to do with defamation, let alone the issue of

material falsity, and involved legitimate disputes arising from the parties' competing

interpretations of complex, confusing, or ambiguous language.[9] *J&J Snack Foods Corp. v.*

*Earthgrains Co.*, 220 F. Supp. 2d 358, 373 (D.N.J. 2002) (linguist's testimony in trademark dispute

was based on a "four-step linguistic analysis" indicating that the phrase "break and bake" was

suggestive and not descriptive because of its "unexpected and playful use of words"); *Aveda Corp.*

*v. Evita Mktg., Inc.*, 706 F. Supp. 1419, 1423 (D. Minn. 1989) (in trademark action between

---

[9]   Plaintiff summarizes the categories of cases considering linguistic testimony as involving "the
likelihood of confusion from words in trademark cases, the comprehensibility of legal documents, the
meaning of words in a statute, wills, or contracts, the ability of an arrestee to understand the Miranda
warnings, and so forth." (Opp. 8) Defendants do not disagree with this general description of the cases
Plaintiff relies on, all of which pertain to contested interpretations of the meaning of language in
different contexts and in no way relevant here.

cosmetic companies, affidavit of linguist stated that "'Aveda' and 'Avita' will be pronounced similarly by the average English speaker"); *Alfa Corp. v. Oao Alfa Bank*, 475 F. Supp. 2d 357, 363 (S.D.N.Y. 2007) (to support trademark infringement claim, linguist provided academic explanation of Russian word's transliteration); *EEOC v. Beauty Enters., Inc.,* 361 F. Supp. 2d 11, 16 (D. Conn. 2005) (linguist testified that workplace's English-only rule discriminated against Hispanic employees in "manual labor environment that is non-language dependent"); *United States ex rel. Free v. Peters*, 806 F. Supp. 705, 711-12 (N.D. Ill. 1992) (linguistics expert "presented detailed exhibits" comparing structure and syntax of different jury instructions); *Wadhams v. Bd. of Cnty. Comm'rs*, 501 So. 2d 120, 123 (Fla. 2d DCA 1987) (linguist testified that language of proposed ballot amendment would confuse voters), *rev'd on other grounds*, 567 So. 2d 414 (Fla. 1990).

Again, this is not a "complex language" case.  The handful of cases Plaintiff relies on are inapposite.

## III.   THE OPPOSITION CONFIRMS THAT THE PROFFERED EVIDENCE IS PROHIBITED BY RULE 704

Plaintiff's tepid argument that his proposed expert testimony is not prohibited by Federal Rule of Evidence 704 fares no better.  It begins with the proclamation that "[n]othing in the testimony of Dr. Roberts even pertains to any legal conclusions or legal standards" (Opp. 12), but in the next breath acknowledges that it goes to "one aspect of defamation liability" (*id*.) — *i.e.*, the "falsity of a statement" (*id*.), which is the "first element" of a defamation claim under Kentucky law.  *Dermody v. Presbyterian Church U.S.A.*, 530 S.W.3d 467, 472 (Ky. Ct. App. 2017).  In this regard, Plaintiff's argument refutes itself.

The Sixth Circuit has elaborated on the meaning, and significance, of Rule 704:

> It would have been easy enough for the drafters of the Federal Rules of Evidence to have said that a properly qualified expert may opine on the ultimate

question of liability.  They did not do so.  When the rules speak of an expert's testimony embracing the ultimate issue, the reference must be stating opinions that suggest the answer to the ultimate issue or that give the jury all the information from which it can draw inferences as to the ultimate issue.  We would not allow a fingerprint expert in a criminal case to opine that a defendant was guilty (a legal conclusion), even though we would allow him to opine that the defendant's fingerprint was the only one on the murder weapon (a fact).  The distinction, although subtle, is nonetheless important.

*Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994).

Plaintiff ignores this "subtle" but "important" distinction in seeking to have Dr. Roberts supplant this Court's Rule 56 adjudicatory role by providing a definitive conclusion as to the Blocking Statements' alleged material falsity.  As a federal district court has instructed in applying Rule 704, "[w]itnesses may not give an opinion on a question of law, because the court alone is the arbiter of the law and its applicability."  *Ross v. Rothstein*, 92 F. Supp. 3d 1041, 1073-74 (D. Kan. 2014) (disregarding legal opinions in rulings on parties' cross-motions for summary judgment) (internal quotations and citations omitted); *see also Sparton Corp. v. United States*, 77 Fed. Cl. 1, at *8 (2007) ("Although Fed. R. Evid. 704 was amended so as not to preclude expert testimony on the ultimate issue, the amendment was not intended to allow an expert to advise the court on what outcome to reach.") (footnote omitted).

According to Plaintiff, Dr. Roberts is "not testifying that a particular course of events constitutes 'manipulation' or [a] 'scheme to defraud.'"  (Opp. 12)  *See United States v. Scop*, 846 F.2d 135, 139 (2d Cir. 1988) (disallowing securities trading expert's testimony presenting legal conclusions).  No — but she is opining, based solely on her review of video evidence, that a particular course of events did not constitute a "block" by her client.  The distinction Plaintiff is urging on the Court fails, as the proffered testimony bears directly on a threshold element of a defamation claim necessary for Plaintiff to survive summary judgment. To be clear, Dr. Roberts is proclaiming that certain facts are "false" under Kentucky law.  Like the government's

12

disqualified expert witness in *Scop*, Dr. Roberts' opinions "embodying legal conclusions exceeded the permissible scope of opinion testimony under the Federal Rules of Evidence." *Id*.

In short, "[e]xpert testimony is an improper mechanism for offering legal arguments to the Court." *Sparton Corp.*, 77 Fed. Cl. 1, at *9; *see also Mid-State Fertilizer Co. v. Exchange Nat'l Bank*, 877 F.2d 1333, 1339 (7th Cir. 1989) ("An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process."). This infirmity is only compounded here given that Dr. Roberts' conclusions do "not relate to h[er] formal training," *Berry*, 25 F.3d at 1350, and were arrived at "without applying specialized knowledge." *Ralston v. Garbedian*, Case No. 19-1539, 2022 U.S. Dist. LEXIS 49, at *25 (E.D. Pa. Jan. 3, 2022) (excluding expert witness's conclusions on ultimate legal issue). Her Report and testimony should be excluded from the Rule 56 motion record because they present legal conclusions on an ultimate issue in violation of Rule 704.

## CONCLUSION

Based on the foregoing reasons and those in their opening brief, Defendants respectfully request that the Court grant this motion and bar Plaintiff from introducing the Report and testimony of Dr. Craige Roberts (1) in support of Plaintiff's motion for partial summary judgment and (2) in opposition to Defendants' joint and supplemental motions for summary judgment.

Dated:  March 28, 2022

Respectfully submitted,
Nathan Siegel (*pro hac vice*)
Meenakshi Krishnan (*pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1301 K Street NW, Suite 500
Washington, DC 20005
Phone: (202) 973-4237
Fax: (202) 973-4437
nathansiegel@dwt.com
meenakshikrishnan@dwt.com

/s/ Robert B. Craig
Robert B. Craig (KBA 15590)
TAFT STETTINIUS & HOLLISTER LLP
50 East River Center Blvd., Suite 850
Covington, KY 41011-1683
Phone: (859) 547-4300
Fax: (513) 381-6613
craigr@taftlaw.com

*Counsel for Defendants ABC News, Inc., ABC News
Interactive, Inc., and The Walt Disney Company*

/s/ Darren W. Ford
J. Stephen Smith (KBA 86612)
Darren W. Ford (KBA 95373)
GRAYDON HEAD & RITCHEY LLP
2400 Chamber Center Drive, Suite 300
Ft. Mitchell, KY 41017
Phone: (859) 578-3070
Fax: (859) 578-3071
ssmith@graydon.law
dford@graydon.law

John C. Greiner (*pro hac vice*)
GRAYDON HEAD & RITCHEY LLP
312 Walnut Street, Suite 1800
Cincinnati, OH 45202
Phone: (513) 629-2734
Fax: (513) 333-4316
jgreiner@graydon.law

*Counsel for Defendant The New York Times
Company d/b/a The New York Times*

/s/ Natalie J. Spears
Natalie J. Spears (*pro hac vice*)
Gregory R. Naron (*pro hac vice*)
DENTONS US LLP
233 South Wacker Drive, Suite 5900
Chicago, IL 60606
Phone: (312) 876-8000
natalie.spears@dentons.com
gregory.naron@dentons.com

14

Jared A. Cox
DENTONS BINGHAM GREENEBAUM LLP
101 South Fifth Street, Suite 3500
Louisville, KY 40202
Phone: (502) 589-4200
jared.cox@dentons.com

Jessica Laurin Meek *(pro hac vice)*
DENTONS BINGHAM GREENEBAUM LLP
10 West Market Street, Suite 2700
Indianapolis, IN 46204
Phone: (317) 635-8900
jessica.meek@dentons.com

*Counsel for Defendants CBS News Inc.,*
*ViacomCBS Inc., and CBS Interactive Inc.*

/s/ Michael P. Abate
Jon L. Fleischaker
Michael P. Abate
KAPLAN JOHNSON ABATE & BIRD LLP
710 W. Main Street, 4th floor
Louisville, KY 40202
Phone: (502) 540-8280
jfleischaker@kaplanjohnsonlaw.com
mabate@kaplanjohnsonlaw.com

Michael J. Grygiel (*pro hac vice*)
Kelly L. McNamee (*pro hac vice*)
Candra M. Connelly *(pro hac vice)*
GREENBERG TRAURIG, LLP
54 State Street, 6th floor
Albany, NY 12207
Phone: (518) 689-1400
grygielm@gtlaw.com
mcnameek@gtlaw.com
connellyc@gtlaw.com

*Counsel for Defendants Gannett Co., Inc. and*
*Gannett Satellite Information Network, LLC*

/s/ Kevin T. Shook
Kevin T. Shook (*pro hac vice*)
FROST BROWN TODD LLC
10 West Broad Street
Columbus, OH 43215
Phone: (614) 464-1211
Fax: (614) 464-1737
kshook@fbtlaw.com

Theresa A. Canaday
Samuel W. Wardle
FROST BROWN TODD LLC
400 West Market Street, 32nd Floor
Louisville, KY 40202
Phone: (502) 589-5400
Fax: (502) 587-1087
tcanaday@fbtlaw.com
swardle@fbtlaw.com

Michael E. Nitardy
FROST BROWN TODD LLC
7310 Turfway Road, Suite 210
Florence, KY 41042
Phone: (859) 817-5900
Fax: (859) 283-5902
mnitardy@fbtlaw.com

Ryan W. Goellner (*pro hac vice*)
FROST BROWN TODD LLC
301 East Fourth Street, Suite 3300
Cincinnati, OH 45202
Phone: (513) 651-6800
Fax: (513) 651-6981
rgoellner@fbtlaw.com

*Counsel for Defendants Rolling Stone, LLC and Penske Media Corporation*